## The City of Philadelphia *versus* Field *et al.*

1. The law-making power of the legislature is supreme within its proper sphere, qualified only by the restrictions and limitations imposed by the constitution.

2. The Acts of April 5th 1866 and April 5th 1867, appointing commissioners to build a free bridge over the Schuylkill at Philadelphia, to create a loan for the purpose, and requiring the councils of Philadelphia to provide for payment of the loan and its interest, are constitutional.

3. The legislature could build the bridge, and pay for it by moneys proceeding from loans or taxes, and employ commissioners to erect it.

May 29th and 30th 1868. Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Certificate from Nisi Prius : In Equity. To January Term 1868, No. 37.

The bill in this case was filed July 1st 1867, by the City of Philadelphia against Samuel Field and twenty-six others named, Morton McMichael, Mayor, Joshua Speering, President of the Select Council and Joseph F. Marcer, President of the Common Council of Philadelphia.

The bill sets out :—

1. That the plaintiffs are a municipal corporation by charter from William Penn and various Acts of Assembly specified.

2. That the plaintiffs are seised of large public squares, &c., from which they derive income, &c., and upon which there is a large annual expenditure, and they owe a funded debt of $37,000,000, have a mayor and other officers, legislative and executive, &c.

3. That by an Act of Assembly of May 16th 1861, made part of the bill, the councils of Philadelphia were required as soon as practicable to erect a bridge over the river Schuylkill opposite South street, at a cost not over $250,000, and create a loan to that amount.

4. That by an Act of Assembly of April 5th 1866, made part of the bill, the first named twenty of the defendants were created a commission to build said bridge and to create a loan not exceeding $600,000, payable by the city in forty years, at an interest of 6 per cent. per annum.

5. That by an Act of Assembly of April 5th 1867, made part of the bill, it is made the duty of the chief engineer and surveyor of the city of Philadelphia to direct the building of said

[City of Philadelphia v. Field.]

bridge, under the supervision and control of the said commission, who are authorized to create an additional loan of $200,000, if necessary, to cover the cost of the erection of said bridge, payable by the city, and the councils of the city of Philadelphia are required to provide for the payment of the interest on all the bonds issued for the erection of the said bridge, to provide a sinking fund for the redemption of the same in forty years, and to furnish the money necessary for the expenses of the said commission, and the mayor, the president of the select council and the president of the common council of the city and last named seven of the defendants were added to the commission.

6. That the plaintiffs did not request the passage of the Acts of 1866 or 1867, but protested against the latter before it was signed by the governor, and would have protested against the former, but were ignorant of its passage until it had been approved, and have since, on the 10th of June 1867, by resolution expressed their disapproval of said acts.

7. That by the Consolidation Act of February 2d 1854, no councilman of the city can be interested in any contract for supplies to the city, nor make any disbursement of corporate moneys, nor perform any executive duty.

8. That the mayor and presidents of the two councils have since the passage of the resolution of June 1st 1867, taken no part in the commission.

9. That the legislative powers of the city are by law exclusively vested in the councils; that the sole power of adjusting and levying the taxes for municipal purposes is vested in the city, and no debt or contract can be binding upon the city unless authorized by law or ordinance, and an appropriation sufficient to pay the same be previously made by councils; and no money can be borrowed on the credit of said city, unless the ordinance or other authority authorizing the same shall have been introduced at one stated meeting of the common council, and the draft thereof published in two newspapers of said city daily for five weeks before the final consideration and passage, and shall have been adopted by a vote of two-thirds of the whole number of each branch of the councils.

10. That according to the true intent and meaning of the said Acts of 1866 and 1867, any contract made for the construction of a bridge across the Schuylkill at South street, must be made with the city according to the provisions of existing laws governing such contracts, and that such contract must be preceded by an appropriation duly made by councils, and that any loan required to meet the amount of such contract must be made in compliance with the aforesaid Acts of Assembly regulating city loans.

11. That the defendants hold no commissions from the governor.

8 P. F. SMITH—21

[City of Philadelphia *v.* Field.]

12. That the defendants have received proposals, and threaten to award a contract for building said bridge and borrow the amount necessary therefor, without consulting the plaintiffs and obtaining their consent or procuring an ordinance by the councils directing the amount to be expended, and authorizing a loan for its payment.

13. That by reason of the rebellion, labor and materials have so increased that since the 16th of May 1861, said bridge could not be constructed for $250,000, and the city has incurred so many expenditures as seriously to embarrass her finances, impair her credit and render the building of the bridge since that time improper and impracticable, and that levying the whole cost on the city would be imposing on her more than her share of taxes.

14. If the defendants should not be restrained, the plaintiffs will sustain great and irreparable loss; the value of the public loans will be impaired, and the cost of raising funds for their future need will be increased.

15. The Acts of 1866 and 1867 violate the constitution of the state.

The bill prayed:—

2. That the defendants be restrained from acting under said acts or attempting to carry out their provisions.

3. That they be enjoined from contracting for the bridge and creating a loan until the councils shall have authorized them.

4. That the mayor and presidents of the councils be enjoined from meeting and acting with the other commissioners.

5. General relief.

The material parts of the several acts are set out in the bill.

The defendants by their answer denied the truth of the 10th, 13th, 14th and 15th paragraphs of the bill, and admitted or had no knowledge of the remaining paragraphs.

On the 3d of September 1867, the court at Nisi Prius dismissed the bill. The plaintiffs appealed and assigned for error the refusal to grant their prayer and the dismissal of the bill.

*J. Lynd*, for appellants, cited Acts of 1861, Pamph. L. 713, of 1866, Pamph. L. 523; of 1867, Pamph. L. 1816. The legislature cannot force a municipal charter on citizens : Kyd on Corporations, page 65; Willcock Municipal Corporations *30; King *v.* Amery, 1 T. R. 575; Clarke *v.* City of Rochester, 24 Barb. 473. The authority to make contracts for the people is necessary to the existence of a public corporation : Sharpless *v.* Philadelphia, 9 Harris 165. In its capacity as owner of property a public corporation cannot be controlled more than a private corporation : Milwaukie *v.* Milwaukie, 12 Wisc. 101; Grogan *v.* San Francisco, 18 Cal. 612; 2 Kent's Com. 275; Dartmouth *v.* Woodward, 4 Wheat. 694; Fletcher *v.* Peck, 6 Cranch 137; Has-

[City of Philadelphia v. Field.]

brouck v. Milwaukie, 13 Wisc. 37; Yarmouth v. Skillings, 45 Maine 133; Hampshire v. Franklin, 16 Mass. 84; Jackson County v. La Crosse, 13 Wisc. 490; Clarke v. Rochester, 24 Barb. 447; Louisville v. The University, 15 B. Munroe 642; Montpelier v. East Montpelier, 29 Verm. 12; Bailey v. The Mayor, 3 Hill 531; Berlin v. New Britain, 9 Conn. 176; Moodalay v. The East India Co., 1 Brown Ch. Rep. *469; Britton v. The Mayor, 21 How. Pr. Rep. 251; Benson v. The Mayor, 10 Barb. 233; People v. Hawes, 37 Id. 440; Atkins v. Randolph, 31 Verm. 226; Blanding v. Burr, 13 Cal. 343.

In local taxation the consent of the local representatives is indispensable: Police Jury v. McDonough, 8 Louis. Ann. 341; City v. Graiple, Id. 563.

The acts are not legislative: Const. of Pa., Art. 1; Phila. Association v. Wood, 3 Wright 79; Tyson v. School Directors, 1 P. F. Smith 9; Holden v. James, 11 Mass. 396; Greene v. Briggs, 1 Curtis C. C. 325; Norman v. Heist, 5 W. & S. 173; Brown v. Hummell, 6 Barr 90; Mott v. The Pennsylvania R. R., 6 Casey 9; Parker v. The Commonwealth, 6 Barr 511; De Chastellux v. Fairchild, 3 Harris 20; Const. of Pa., Article 6, § 8; State v. Kennon, 7 Ohio (N. S.) 546.

In local taxation the legislature is not the judge of the *degree* of the *local interest:* Sedgwick, Statutory and Constitutional Law 673; Commonwealth v. Mann, 5 W. & S. 417; McCullough v. Maryland, 4 Wheat. 430; Dobbin v. Erie, 16 Peters 435.

Taxing Philadelphia to pay for the bridge is taking private property without the owners' consent: Morford v. Unger, 8 Clarke (Iowa) 82; Cheany v. Hooser, 8 B. Munroe 330; Wells v. Weston, 22 Missouri 384.

*Meredith* for appellees.—A municipal charter is not a contract: Angell v. Ames, on Corp. § 31; Baltimore v. Maryland, 15 Md. 376; Berlin v. Gorham, 34 N. H. 266; The People v. Wren, 4 Scam. 269; Warren v. Charlestown, 2 Gray 104; The People v. Morris, 13 Wend. 337; Grogan v. San Francisco, *supra.* The increase in value of the city property is to be considered: Kirby v. Shaw, 7 Harris 258; N. Hempstead v. Hempstead, 2 Wend. 109; s. c., 1 Hopk. Ch. 289; Denton v. Jackson, 2 Johns. Ch. 336.

Property not *directly* appropriated to public use is not *taken* within the constitutional prohibition although it may be subjected to heavier burdens: Sharpless v. Mayor, 9 Harris 147; Monong. Nav. Co. v. Coons, 6 W. & S. 113; Henry v. Bridge Co., 8 Id. 85; Watson v. R. R. Co., 1 Wright 479; Mifflin v. R. R. Co., 4 Harris 192–3; Phila. & Trenton R. R. Co., 6 Wh. 35; Baltimore v. Md., *supra.*

[City of Philadelphia *v.* Field.]

The legislature may appoint to offices of temporary and local concern: Commonwealth *v.* Sutherland, 8 S. & R. 146.

The legislature can tax a local community for a public object without its consent: Smedley *v.* Erwin, 1 P. F. Smith 445; County *v.* Sharswood, 7 W. & S. 16; London *v.* Wood, 12 Mod. 686. He also referred to Acts of Assembly directing municipal officers to perform particular acts: August 14th 1725, 1 Sm. & R. Laws 168; February 27th 1798, 3 Id. 306; February 13th 1804, Respecting the poor of Delaware county, 4 Id. 129; March 10th 1806, Poor of Montgomery county, 4 Id. 294; March 31st 1807, 4 Id. 388; March 28th 1806, Poor of Dauphin county, Id. 341; March 11th 1807, Poor of Franklin county, 4 Id. 376; April 10th 1807, Poor of Bucks county, 4 Id. 452; March 24th 1808, Poor of Cumberland county, 4 Id. 502.

Empowering the courts to order municipal officers to do certain acts and compel payment by municipal taxation: April 11th 1799, 3 Sm. & R. Laws 401; April 6th 1802, Id. 520. Empowering the governor to appoint commissioners who are to be paid by the municipalities: March 31st 1812, 5 Sm. R. Laws 383; February 18th 1813, 6 Id. 24; March 29th 1819, 7 Id; May 20th 1864, Pamph. L. 911.

Directing courts to appoint officers and requiring municipalities to borrow money and levy a tax for the officers, April 28th 1854, Pamph. L. 506. Abolishing municipal corporations and creating others in their place: April 17th 1859, Pamph. L. 400; April 5th 1869, Pamph. L. 777. Appointing judges to erect public buildings and to borrow money, and requiring Philadelphia to make a loan and provide for its payment: April 2d 1860, Pamph. L. 586. Appointing local officers by name, directing other persons to appoint such officers, and requiring the municipality to pay the expenses: March 13th 1862, Pamph. L. 113; April 22d 1863, Id. 553; March 28th and 29th and April 10th 1867, Id. 592, 601, 1052; March 14th and 27th 1865, Id. 320, 786. Requiring a municipality to pay specific sums to certain persons, and certain officers to perform certain duties: April 1st 1863, Pamph. L. 242; May 20th 1864, Id. 607.

The opinion of the court was delivered, July 2d 1868, by

READ, J.—The whole law making power of the state is committed to the legislature with certain restrictions and limitations imposed on that body by the constitution. Independently of those limitations the legislative power is supreme within its proper sphere.

In the exercise of this power the legislature have dug canals, built bridges and railroads, and paid for them by money raised by loans and taxation. This power is indisputable, and upon its constitutionality depends our large state debt. The legislature

[City of Philadelphia v. Field.]

could undoubtedly build this bridge over a navigable river at South street, and pay for it by moneys proceeding from loans or taxes, and in doing it they might employ commissioners to erect it. This must be conceded, and it is but one step further, to impose the cost of erection on the city and county, through which the river passes and empties itself into the Delaware, and across which the bridge is thrown, connecting the east and west banks of the Schuylkill, upon which Philadelphia is built.

It becomes in fact a bridge of necessity, connecting two growing portions of the city, and forming a part of a continuous highway from the Delaware to the remotest parts of West Philadelphia. The city has an area of one hundred and thirty square miles and eight hundred thousand souls, and the question is, cannot the state place the cost of this great public improvement upon a locality and a population directly benefited by it? This does not appear to admit of argument, for the mere statement of it is sufficient.

But we are not wanting in direct authority upon this point. In Thomas v. Leland, 24 Wendell 65, it was held, that an act of the legislature imposing a tax upon a local district of the state, in reference to a public improvement, such as a canal, is valid and constitutional, notwithstanding that previous to the passage of such act, a number of individuals of such district had entered into a bond to the state, by which they bound themselves to pay the whole expense of the improvement. In answer to some objections Mr. Justice Cowen says, "But the argument proves quite too much. It would go to cut off entirely many acknowledged powers of taxation; such as that which raises money to relieve the poor, or establish and keep on foot common schools, to build bridges, or work the highway. It confounds two distinct legislative powers: a simple power of taxation with the power of taking private property for public use. The former acts upon communities, and may be exerted in favor of any object which the legislature shall deem for the public benefit. A tax to build a lunatic asylum may be mentioned as one instance. If the power to impose such a tax were to be rested on the ground of individual pecuniary benefit to each one who should be called on to contribute, it is quite obvious that it would not be maintained for a moment. Yet who would doubt that such might be imposed on a local community, a county or even a town? I admit that this power of taxation may be abused; but its exercise cannot be judicially restrained, so long as it is referable to the taxing power."

The same doctrine is laid down in Norwich v. County Commissioners of Hampshire, 13 Pickering 60, and Hingham and Quincy Bridge and Turnpike Corporation v. County of Norfolk, 6 Allen 353. "It has been the practice," says C. J. Shaw, "from the earliest times to charge the costs of certain large and expensive

[City of Philadelphia *v.* Field.]

bridges, in whole or in part upon counties; and it is impossible to deny the equity of these provisions." " One of the main purposes," says C. J. Bigelow, " of this general grant of power, was to vest in the legislature a superintending and controlling authority, under and by virtue of which, they might enact all laws, not repugnant to the constitution, of a police and municipal nature, and necessary to the due regulation of the internal affairs of the ·Commonwealth. It is obvious, that the exercise of such a power is absolutely indispensable, in a wisely governed and well ordered community; and among the purposes for which it is to be exerted, none is more essential than a wise and careful distribution of certain public burdens or duties. Of these a leading one is the construction, support and maintenance of roads and *bridges*." Mr. Sedgwick, in his Treatise on Statutory and Constitutional Law, says, p. 554, " As a general rule the taxing power has been treated by the judiciary as vested in the absolute discretion of the legislative bodies. This doctrine has been repeatedly declared both by the state and Federal tribunals." " So the Supreme Court of the United States have said, that there is no limitation whatever upon the legislative power of the states, as to the amount or objects of taxation."

The act before us imposes the cost of erecting this bridge upon the county of Philadelphia, and the money is to be raised by a loan created by the commissioners, and to be deposited with the treasurer of the city of Philadelphia, to be checked out by the officers of the commission, and expended on the construction of the bridge. By the 4th section the councils are to provide for the principal and interest of this debt, which thus will become a part of the city debt. In King & Ross *v.* The City of Brooklyn, 42 Barbour 627, we find a similar statute in New York for widening Fourth avenue in Brooklyn, by a board of commissioners, the difference being that the city, and not the commissioners, were to issue the bonds.

The object of this act is to build a free bridge over the Schuylkill at the cost of the county. All the present bridges over that river from the Girard avenue bridge to its mouth are free, and they have been made so wholly or partially at the cost of the county.

There were four principal ferries over the river Schuylkill, one at High or Market street vested by the Colonial Act of 1723 in the then corporation of the city, the Upper or Roach's Ferry as it was then called, at Fairmount, the Lower (then Blunston's) Ferry, since Gray's Ferry, and Penrose's Ferry, near the mouth of the river. The three first named ferries were succeeded by floating bridges which opened to admit vessels. The bridge at High street was superseded by the Permanent Bridge erected under an Act of 16th March 1798, and opened for passengers and

transportation on the 1st day of January 1805, and cost $300,000. The first bridge of a permanent character near where the floating bridge of Abraham Sheridan was, known by the name of "The Upper Ferry," was erected under an Act of 28th March 1811, and cost $126,000. This bridge, which had only a single arch of wood of 140 feet span, was burned down, and the present wire bridge built at the expense of the county by Charles Ellet, civil engineer, for $50,000, the abutments of the former bridge having been purchased by the district of Spring Garden for $15,000.

Under two Acts of Assembly of the 24th February and 7th March 1837, the Philadelphia, Wilmington and Baltimore Railroad Company purchased the Gray's Ferry floating bridge and estate, and erected the present bridge for railroad and other travelling and transportation with a draw in it. By an act to authorize the erection of free bridges over the river Schuylkill at or near Philadelphia, passed 16th March 1839, the wire bridge at Fairmount was erected by the county commissioners with the consent of the county board, one-third of the expense being provided by voluntary subscription, and the Permanent Bridge at Market street was freed by the county commissioners paying the company $80,000, one-third of which was provided by private subscriptions. The bridge and site were conveyed to the city. This purchase rendered the provision for a free bridge at Mulberry or Arch street nugatory. By the last section the county commissioners with the consent of the county board were authorized to and did contract with the railroad company for a free passage for ever of the Gray's Ferry Bridge for $55,000; by an agreement dated the 10th November 1847, the company to maintain the structure in good order.

The bridge at Market street was rebuilt by the city to suit the uses of the city railroad.

Under the Act of 27th March 1852, to authorize the erection of free bridges over the river Schuylkill, the Girard avenue bridge was built by the county commissioners, and finished by the city at a cost of $93,560.

Under the same act, and the 8th section of the Act of 21st April 1855, and the 3d section of the Act of 16th May 1857, the Chestnut street bridge was erected by the city at a cost of $500,477.79, of which sum the Philadelphia City Passenger Railway Company provided $100,000 in their bonds. It was commenced on the 19th September 1861, and completed July 4th 1866. There will be found an interesting discussion in relation to this bridge in The Board of Wardens v. The City of Philadelphia, 6 Wright 209.

The Rope Ferry, near the mouth of the Schuylkill, was superseded by the Penrose Ferry bridge, erected by the Penrose Ferry Bridge Company, under Acts of April 9th 1853 and 13th April

[City of Philadelphia *v.* Field.]

1854, as a toll-bridge, and was purchased by the city under the ordinance of December 17th 1862 for the sum of $30,000, and was made a free bridge. Since that period it has cost the city in repairs $15,000, and in an entire rebuilding, $66,261.11.

The Peter's Island bridge was built by the state for the Columbia railroad, and was purchased and is owned by the Philadelphia and Reading Railroad Company, and one side of it is used as a toll-bridge for passengers and carriages and other vehicles.

The Schuylkill Falls bridge was built by a company as a toll-bridge, and was purchased by the city and made a free bridge under the Acts of 5th April 1855 and 15th March 1859, and the ordinance of March 3d 1860. The amount paid was $15,000, and it was afterwards rebuilt by the city at a cost of $17,500 in 1861.

All the bridges, therefore, from the Falls to the mouth of Schuylkill are free, excepting the Peter's Island and the railroad bridges of the Connecting Railroad and Pennsylvania Railroad, and have been made so at a very heavy expense to the county of Philadelphia, whether called by that name or its present name of the city of Philadelphia.

By an act to authorize the erection of a free bridge over the river Schuylkill, at South street in the city of Philadelphia, passed May 16th 1861, the councils of the city were authorized and required to erect a good and substantial bridge over the river Schuylkill, at or opposite to South street, its cost not to exceed $250,000, provided for by a loan to be raised as therein directed, said bridge to be free, and kept in repair, lighted, watched, altered, remodelled or renewed, if necessary, at the proper costs and charges of the city of Philadelphia.

The city having taken no action under this law, a supplement to it was passed 5th April 1866, appointing commissioners to build the bridge, with authority to create a loan not exceeding $600,000, payable by the city of Philadelphia. After further opposition by councils, the legislature, on the 5th April 1867, passed a further supplement making it the duty of the chief engineer and surveyor of the city to direct the building of the bridge under the supervision and control of the commissioners. The bridge was to have a sufficient and convenient draw for masted vessels, and to defray the additional expense the commissioners are authorized to create an additional loan of $200,000. These loans to be at 6 per cent. and payable by the city in forty years, and the proceeds paid to the city treasurer. The councils are to provide for the payment of the interest, and a sinking fund to extinguish the principal in forty years. The mayor, the presidents of councils and other gentlemen are created additional commissioners. The councils contest the constitutionality of these acts, and under a resolution of those bodies the city solicitor has filed this bill to test that question, and has made a very learned

[City of Philadelphia v. Field.]

and elaborate argument to show that these laws are violations of the constitution, and that this court is bound to enjoin the erection of this bridge as directed by those acts.

"It will not be denied," said Judge Woodward, "that the legislature may rule over the Schuylkill by whatever agency is most satisfactory. Nor can it be doubted that a subsequently appointed special agent supersedes and displaces a previously appointed general agent, and this without express words declaratory of the intention to substitute. Counsel invoke those principles of strict construction which apply to grants to private corporations, as if the city of Philadelphia were a bridge company claiming a valuable franchise in derogation of the public rights; but it must be manifest that this is not the case for the application of these principles. The city is not a private but a municipal corporation, and is to derive no profit whatever from the bridge, for it is to be a free and not a toll-bridge. The city like the county commissioners are a selected agency for carrying out the purposes of the legislature to bridge the Schuylkill for the benefit of all the people of the Commonwealth:" 6 Wright 218.

This is strictly applicable to the present case: the city declined the agency, and a special agent is appointed to do what she has refused to perform. The legislature, in the legitimate exercise of its power, has imposed the cost of bridging the river, as she has done before, on the county—the present city. "The only interest involved is the public interest, and no other is concerned in their" (municipal corporations) " erection, continuance, alterations or renewals. The nature and operation of these corporations repudiate the idea of vested rights." "We know of no vested rights of political power in any citizen or body of citizens, except those conferred by the constitution:" 13 Wend. 337. The corporation of the city can be changed, altered or repealed by the legislature, and it would be a singular anomaly if that body could not by its own officers erect a bridge over a navigable river which is certainly not a duty of a city, unless required by the sovereign power of the state, and put the costs on the city.

Our opinion therefore is that these acts are constitutional and must be obeyed.

> The decree is affirmed, and appeal dismissed at the cost of the appellants.

THOMPSON, C. J., and SHARSWOOD, J., dissented.