[Filed April 15, 1889.]

GRANT COUNTY, Appellant and Respondent, v. LAKE COUNTY, Appellant and Respondent.

COUNTY — ACTION AGAINST. — An action at law cannot be maintained against a county unless authorized by statute.

ID. — Section 2239 Code of Miscellaneous Laws of Oregon, which provides that each county shall continue to be a body politic and corporate for certain purposes, authorizes an action to be maintained by or against a county for any cause affecting its rights or duties as such corporate body.

ID. — For the purposes for which a county is made a body corporate and politic, it is a person, and is capable of suing and being sued in regard to matters pertaining to those purposes, the same as an individual.

ID. — The creation of a body corporate for any purpose impliedly confers upon it the incidental powers belonging to a corporation; which includes the power to sue and be sued so far as necessary to maintain its corporate rights and enforce its corporate duties.

CONSTITUTIONAL LAW — COUNTY — INDEBTEDNESS OF — WHEN VALID — COUNTY LIABILITY OF UNDER LAW IMPOSING SAME. — Where the legislative assembly of the state passed an act which provided that certain territory should be taken from the county of G. and annexed to the county of L., and that the treasurer of the county of L. should pay to the treasurer of the county of G. such portion of the indebtedness of the latter county as the taxable property of the territory taken bore to the whole amount of taxable property of said county of G., not to exceed five thousand dollars, as said taxable property appeared by the assessor's roll of the year 1884, held, notwithstanding the provisions contained in section 350 of the Code of Civil Procedure of the state, to the effect that an action could only be maintained against a county upon a contract made by such county in its corporate character; that an action was maintainable in favor of the county of G. against the county of L., to recover from the latter county such proportion of the said indebtedness; that the legislative assembly had power in such a case to impose an obligation upon a county, and the discharge of it became a corporate duty which could be enforced

by an action at law, and that the right to such an action was not affected by said section 350 of the Code of Civil Procedure, which in terms limits actions against counties to strict matters of contract; that it was known as a part of the history of legislation upon the subject that said section 350 was only intended to amend section 347 of the former code of the state, so as to avoid the consequences resulting from a construction the court had given said latter section, which was to the effect that it permitted actions to be maintained against counties for pretended injuries received by persons, by reason of alleged defects in bridges upon the public highways; *held further*, that the fact that the indebtedness of the county of G. at the time of the passage of the said act exceeded the sum of five thousand dollars, did not support a finding of a conclusion of law; that the part of the indebtedness in excess of that sum was illegal and void; that the clause in the constitution of the state which provides "that no county shall create any debts or liabilities which shall singly or in the aggregate exceed the sum of five thousand dollars," etc., does not imply that all debts and liabilities against a county over and above said sum are necessarily obnoxious to said provision; that the provision only applies to debts and liabilities beyond said sum which a county in its corporate character, and as an artificial person, voluntarily creates.

COUNTY — INTEREST TO PAY WHEN. — *Held, also,* that interest should not be allowed upon a claim against a county until a warrant therefor has been presented to the treasurer thereof, and an indorsement made thereon, "Not paid for want of funds," and the date of such presentment over the treasurer's signature.

APPEAL from the Circuit Court for the county of Klamath.

*Zera Snow,* for Grant County.

*C. A. Cogswell,* for Lake County.

At the special session of the legislative assembly of the state, held in November, 1885, it was enacted that a certain portion of territory should be taken from Grant County and annexed to Lake County. The act was approved November 21, 1885, and took effect at that time. Section 2 of the act provides as follows:—

"Sec. 2. The treasurer of Lake County shall pay to the treasurer of Grant County such a portion of the indebtedness of Grant County as the taxable property of the territory described in section 1 bears to the whole

amount of taxable property of· said Grant County, not to exceed five thousand dollars, as said taxable property appears by the assessor's roll of the year 1884," 

Subsequently, and on the third day of· August, 1887, Grant County commenced an action against Lake County to recover the amount due to the former, under and by virtue of said section 2· of said act.   It was alleged in the amended complaint filed in said action that the plaintiff and defendant therein were duly organized counties in the state of Oregon; that the said act was passed and contained the terms herein set out; that at the time it went into effect,—November 21, 1885,—the indebtedness of Grant County was the sum of $44,501.29; that on said date the taxable property of the territory so taken from Grant County was the sum of $302,152; that at said date the whole amount of taxable property of Grant County, as said taxable property appeared by the assessor's roll of the year 1884, was $3,125,352; that on said date there was due to plaintiff, from the defendant, the sum of $4,298.82; for which sum the plaintiff demanded judgment.   To which complaint the defendant in said action filed an answer denying any knowledge or information of any indebtedness of Grant County, as alleged in the complaint, or that the taxable property of the territory taken from Grant County was, on said date, or at any other date, the sum of $302,152, or any other sum; and denied that there was anything due from defendant to plaintiff, as alleged in the complaint.

These were the main issues in the pleadings.   A demand of the amount due from the defendant to the plaintiff was alleged in the complaint and denied in the answer.

Afterwards, and at the June term, 1888, of the said circuit court, the said action coming on for trial, and a jury trial thereof having been duly waived, the same was tried before the court without a jury.

Said court upon said trial found the following facts:
"1. On the twenty-first day of November, 1885, Grant
County was indebted in the sum of $44,501.29; 2. The
taxable property of Grant County, as shown by the asses-
sor's return for the year 1884, amounted to the sum of
$3,125,352; 3. The taxable property of that part of Grant
County which was annexed to Lake County amounted to
the sum of $302,152; 4. The taxable property of that part
of Grant County which was annexed to Lake County
amounted to nine and sixty-six one hundredths per cent
of the whole taxable property of Grant County." And
upon said facts said court found the following conclu-
sions of law: All that part of the indebtedness of Grant
County in excess of five thousand dollars is illegal and
void, so far as this defendant is concerned. The plaintiff
is therefore entitled to recover of the defendant nine and
sixty-six one hundretbs per cent of five thousand dollars;
with interest thereon at eight per cent per annum from
the twenty-first day of November, 1885. Judgment hav-
ing been entered in accordance with the said findings of
law, both parties took an appeal therefrom to this court,
which is the appeal before referred to.

THAYER, C. J.—Why it should have been necessary to
resort to litigation regarding the matters involved herein
is beyond my power to conjecture. The act in question
is very plain and simple. The citizens of Lake County
evidently desired that a certain part of the territory of
Grant County be detached therefrom and attached to their
county, and the legislature enacted that it be done; but
inasmuch as Grant County was indebted in a large sum,
and the effect would be to curtail its source of revenue, a
provision was inserted in the act that the treasurer of
Lake County should pay to the treasurer of Grant County
such a portion of the indebtedness as the taxable property

of the territory taken therefrom bore to the whole amount of its taxable property, not to exceed five thousand dollars, and the assessor's roll for Grant County for the year 1884 was made the basis from which said amount of the taxable property and such proportion thereof were to be ascertained.

The circuit court found as a fact that Grant County was indebted in the sum of $44,501.29; that its taxable property, as shown by the assessor's roll for said year 1884 amounted to the sum of $3,125,352, and that the taxable property of the territory taken therefrom and annexed to Lake County was one ninth and sixty-six one hundredths of a ninth thereof; and there seems to be no disagreement between the parties as to the correctness of this finding. All that was necessary, therefore, to a proper adjustment of the matter, was for the treasurer of Lake County to pay the treasurer of Grant County that proportion of the said amount of indebtedness. Such seems to to have been the obvious intention of the legislature, and Lake County should, with reasonable promptness, have discharged the obligation thus imposed upon it. The legislature, as said by Sawyer, J., in *People v. Alameda County*, 26 Cal. 648, "may divide counties and create new ones, or change the boundaries, as in its wisdom it may deem the public interest to require; and in creating new counties out of territory taken from counties already organized, it is but just that it should apportion the debts already accrued between the new and the old counties in the ratio of the territory, population, taxable property, and benefits conferred on the respective counties or portions of counties affected by the change."

Lake County set up no defense to the action, beyond a denial of the complaint, and its counsel relied wholly upon legal technicalities to prevent a recovery in the case. The main point of their contention was, that since

the amendment of section 347 of the former code, which is section 350 of the present one, no action can be maintained against a county in this state, except as therein provided. That an action cannot be maintained against a county except for a cause authorized by statute, is no doubt a correct proposition of law.

A county, as defined and described in 4 American and English Encyclopedia of Law, title "County," is: "One of the civil divisions of a state for judicial and political purposes; a local subdivision of a state, created by the sovereign power of this state of its own will, without the particular solicitation, consent, or concurrent action of the people who inhabit it; a local organization, which, for the purpose of civil administration, is vested with a few functions of corporate existence."

And no one would contend that an action could be maintained against such an organization unless the right were given by the power creating it.

Under the code of this state, however, the authority to maintain an action against a county is not derived from said section 350, but exists independently of it.

Section 2239, Miscellaneous Laws, provides that "each county shall continue to be a body politic and corporate for the following purposes, to wit: To sue and be sued; to purchase and hold for the use of the county lands lying within its own limits, and any personal estate; to make all necessary contracts, and to do all other necessary acts in relation to the property and concerns of the county." Hence if section 350 as amended, or the original section 347 as it stood prior to the amendment, had never been adopted, an action could have been maintained by or against a county for any cause affecting its rights or duties as such corporate body. For the purposes for which a county is made a body corporate and politic, it is a person, and is capable of suing and being sued in regard to

matters pertaining to those purposes the same as an individual. Its powers as a corporate body, are, however, very limited, they extend only to the subjects enumerated in the section of the laws referred to; but the mere vesting of any corporate powers in a county organization would, in my opinion, authorize it to sue or be sued without any express provision to that effect. Creating a body corporate for any purpose would impliedly, it seems to me, confer upon it the incidental powers belonging to a corporation, which include the power to sue and be sued. Nor do I believe that the legislature, in amending said section 347 of the code, intended to limit such right. It is well known as a part of the history of the legislation of the state how that amendment came about. Said section, prior to the amendment, read as follows:—

"An action may be maintained against a county or other of the public corporations mentioned or described in section 346, either upon a contract made by such county or other public corporation in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation."

This court in *McCalla* v. *Multnomah County*, 3 Or. 424, in an action to recover damages caused by the plaintiff's child falling through a hole in a bridge on a country road in said county, held that the clause in said section 347, which reads, "Or for an injury to the rights of the plaintiff arising from some act or omission of such county," etc., gave the plaintiff a right of action for the injury. The court there held that road supervisors were agents for the county, and the county was liable for their negligence in not repairing a bridge. Such agency seems to have been inferred from the fact that all county roads were under the supervision of the county court in the county in which they were situated; that it was the duty

of the county court to appoint supervisors in the various road districts of the county, and it had power to remove them on failure to perform their duties.

It is unnecessary to say that the logic of that decision was not appreciated by the members of the bar; but its doctrine was enforced until the people of the various counties got tired of having to pay the damages to unscrupulous claimants for pretended injuries, in consequence of alleged defects in roads and bridges, and the legislature concluded to change it, by declaring, in the emphatic language of said section 350 of the present code, that "an action may be maintained against any of the organized counties of this state, upon a contract made by such county in its corporate character, and within the scope of its authority, *and not otherwise.*"

The evident object of this amendment was to escape from the pernicious consequences resulting from the decision in *McCalla* v. *Multnomah County,* the soundness of which, in the opinion of a number of attorneys, was at least doubtful. It requires considerable credulity to believe that a road supervisor, who is appointed by law, and required to take an oath of office that he will faithfully discharge the duties thereof, and who, if required by the county court appointing him, must enter into an undertaking to the county, with sureties in the sum of a thousand dollars, to the effect that he will faithfully account for and pay over to his successor all moneys that may be in his hands, by virtue of his office, is an agent of the county, and that the latter is liable to damages in consequence of his dereliction of duty.

In any event, the said amendment must be construed in connection with said section 2239 of the Miscellaneous Laws, which subjects a county to a suit on account of any matters arising out of its corporate obligations, whether created by contract or otherwise. In the case

under consideration, the legislature took from Grant County a certain part of its territory and annexed it to Lake County; and because it thereby lessened the resources of the revenues of Grant County, and increased those of Lake County, it shifted a proportionate part of the indebtedness of the former county on to the latter, and, in effect, required the latter-named county to pay it to the former. The legislature by that act created a corporate obligation in favor of Grant County, and against Lake County; and as it provided no particular mode for enforcing it, it follows that an action at law is the proper remedy.

Section 349 of the code clearly gives a right of action in favor of a county to enforce such an obligation. It provides that an action at law may be maintained by a county, incorporated town, school district, or other public corporation of like character, etc., "upon a liability prescribed by law in favor of such public corporation"; and unless, therefore, section 350 of the code absolutely exempts a county from being sued on account of such liability, the action herein was maintainable.

In my opinion, the latter section should not be construed so as to exempt a county from being sued for the violation of a strict corporate duty; that in a limited sense a county is an artificial person, and so far as it is clothed with powers of a private nature, or such as pertain to a private corporation, it is responsible for its obligations, whether it expressly contracts them or they arise by operation of law, the same as a natural person.

The counsel for Lake County also contend that the power to determine the amount of the Grant County indebtedness to be paid by Lake County is legislative, and that the courts have nothing to do with it; that if the legislature has failed to provide in what manner the amount of the indebtedness shall be ascertained, the court

cannot supply the defect.    They further contend that the complaint does not state facts sufficient to constitute a cause of action, as it alleges what the taxable property in that portion of Grant County annexed to Lake County was on the twenty-first day of November, 1885, and not what it was as appears by the assessor's roll of the year 1884, as mentioned in the act; and further, that it is not alleged in the complaint that the county court for Lake County refused to audit and allow the claim in favor of Grant County; and for all that appears in the complaint, the latter county may now have a warrant drawn upon the county treasurer of Lake County for the money demanded.

As to the first of these latter contentions, it is sufficient to say that the legislature did not fail to provide in what manner the amount of the claim to be paid by Lake County to Grant County should be ascertained; it makes the assessment roll of 1884 the basis for the apportionment of the indebtedness of Grant County; and furnishes ample data for determining the amount to be paid by Lake County.

I think the complaint contains a cause of action, although the amount of taxable property taken from Grant County and annexed to Lake County, as appears by the assessor's roll of the year 1884, is not alleged therein. The allegation in the complaint is to the effect that, on November 21, 1885, the time when said act went into effect, the taxable property of the territory so taken from Grant County was the sum of $302,152. The pleader should have alleged what proportion the taxable property of the territory taken from Grant County and annexed to Lake County bore to the whole amount of taxable property of said Grant County, as said taxable property appeared by the assessor's roll of the year 1884.

I think he aimed to do that; but the language he em-

ployed would seem to leave a contrary inference. He, however, set out the terms of the act, and the counsel for Lake County could not have been misled by the manner of his statements, and the circuit court appears to have adopted, in that particular, the proper basis of adjustment. The objection to the complaint that it is not alleged therein that the county court for Lake County refused to audit and allow the claim in favor of Grant County is not well taken. Such audit and allowance would be payment, and the defendant, in order to avail itself of it, must plead it.

The remaining question for consideration in the case is, whether the conclusion of law that "all that part of the indebtedness of Grant County in excess of five thousand dollars is illegal and void so far as the defendant is concerned," is supported by the finding of the fact, that "on the twenty-first day of November, 1885, Grant County was indebted in the sum of $44,501.29." The circuit court seems to have assumed that a county could not legally become indebted in a sum in excess of five thousand dollars; that the fact of its owing more than that amount rendered the part thereof exceeding it illegal. This, I think, was erroneous. The constitutional inhibition that no county shall create any debts or liabilities which shall, singly or in the aggregate, exceed the sum of five thousand dollars, except to suppress insurrection or repel invasion, does not imply that all debts and liabilities against a county over and above that sum are necessarily obnoxious to that provision. To justify the court in finding the said conclusion of law, it should have found that the county *created* the indebtedness. Counties do not create all the debts and liabilities which they are under; ordinarily such debts and liabilities are imposed upon them by law. A county is mainly a mere agency of the state government,—a function through which the

state administers its governmental affairs,—and it has but little option .in the creation of debts and liabilities against it. It must pay the salaries of its officers, the expenses incurred in holding courts within and for it, and various and many other expenses the law charges upon it, and which it is powerless to prevent. Debts and liabilities arising out of such matters, whatever sum they may amount to, cannot in reason be said to have been created in violation of the provision of the constitution referred to, as they are really created by the general laws of the state, in the administration of its governmental affairs. Said provision of the constitution, as I view it, only applies to debts and liabilities which a county, in its corporate character, and as an artificial person, voluntarily creates. The circuit court should, therefore, have found, as a conclusion of law from the said fact found by it, that said county of Grant was entitled to recover of the said county of Lake nine and sixty-six one hundredths per cent of the said $44,501.29, which, according to my computation, is $4,298.82.

The circuit court allowed interest upon .the amount found due, but I doubt very much whether interest should be allowed on a claim against a county until a warrant therefor has been presented to the county treasurer for payment, and payment refused for want of funds. (Sec. 2465, Code, Misc. Laws.)

The case must be remanded to the said circuit court, with directions to enter a judgment, upon the facts found by the said court, in favor of Grant County, the plaintiff in the action herein, and against Lake County, the defendant in said action, for the sum of $4,298.82; that neither party recover cost upon the appeal, beyond the proper disbursements incurred on the appeal, including the fees of the clerk of this court, which disbursements and fees shall be taxed against Lake County.