## BESSEMER INV. CO. v. CITY OF CHESTER.

### No. 19902.

District Court, E. D. Pennsylvania.
Feb. 14, 1938.

Dechert, Smith & Clark and Joseph S. Clark, Jr., all of Philadelphia, Pa., for plaintiff.

Townsend, Elliott & Munson, and George F. Baer Appel, all of Philadelphia, Pa., and A. A. Cochran, and J. DeHaven Ledward, both of Chester, Pa., for defendant.

MARIS, District Judge.

This is an action of assumpsit in which a jury trial has been waived. The plaintiff seeks to recover the principal and interest of $196,600 face amount of street improvement bonds held by it which were issued by the defendant, the City of Chester, in good faith at various times between November 6, 1923, and March 2, 1931, pursuant to ordinances regularly adopted under statutory authority. The bonds were all in substantially the same form. Each bond provided that it and the interest thereon was based solely and alone upon the assessments made against the abutting property owners on a designated street to pay the costs and expenses of the construction of a roadway pavement thereon. Each bond further provided that it should be paid within ten years from the date of its issue whenever money accumulated in the paving account of the said street sufficient to pay one or more bonds in excess of the amount necessary to pay interest, from the assessments made as aforesaid. The bonds were not obligations of the city, but were to be paid solely out of the proceeds of the assessments made against the abutting property owners. The plaintiff nevertheless seeks to recover the amount of the bonds from the city and asserts two grounds as the basis for its action.

The first is that by certain acts of Assembly, of Pennsylvania liability for the payment of these bonds has been imposed upon the city. The statutes relied on are the Act of April 11, 1929, P.L. 509, 53 P.S. Pa. § 1871 note; Act June 23, 1931, P.L. 929, 53 P.S.Pa. § 1895, and June 3, 1933, P.L.1466, 53 P.S.Pa. § 397a. Since these statutes are substantially identical, it will only be necessary for us to consider the act of 1933 which was passed after all of the bonds here involved had been issued. This act, 53 P.S.Pa. § 397a, is as follows: "Whenever heretofore any municipal corporation has in good faith issued bonds or other obligations for the payment of the cost of a public improvement, on the assumption that such bonds were not debts of the municipality within the meaning and intent of article nine, section eight, of the Constitution, for the reason that such bonds or obligations were secured or to be secured by assessments against property benefited by such improvement, and were to rest alone for their security and payment upon such assessments, such bonds and obligations are hereby ratified, confirmed, and made valid and binding obligations and debts of the municipality, notwithstanding the fact that the corporate authorities of the municipality failed, either in whole or in part, to comply with the laws of the Commonwealth providing the method of incurring and increasing its indebtedness: Provided, however, That this act shall not be construed to validate any such issue of bonds or obligations as valid debts of the municipality, where the amount of any such

issue, when added to the existing debt of the municipality, exceeds the limits of indebtedness permitted by the Constitution."

■ While the defendant speaks of this statute as merely a validating act, it is quite clear that it had a twofold object. One undoubtedly was to validate, that is, to ratify and confirm as such, all improvement bonds theretofore issued in good faith by municipalities. It is equally clear that the act also proposed that the bonds thus validated as improvement bonds should in addition be made valid and binding obligations and debts of the municipality, if within the constitutional debt limits, notwithstanding the fact that the corporate authorities of the municipality when issuing the bonds had wholly failed to follow the statutory method for incurring or increasing its indebtedness. It must, therefore, be held that the obligation of the bonds in suit has been imposed upon the city by the act referred to, if it was within the power of the Pennsylvania Legislature to do so.

■ It is settled in Pennsylvania that, except as restrained by the State Constitution, the Legislature has supreme authority over municipalities and their affairs and consequently full power to impose indebtedness upon them by law. City of Philadelphia v. Field, 58 Pa. 320; Perkins v. Slack, 86 Pa. 270; Commonwealth v. Moir, 199 Pa. 534, 49 A. 351, 53 L.R.A. 837, 85 Am.St.Rep. 801; Shirk v. Lancaster City, 313 Pa. 158, 169 A. 557, 90 A.L.R. 688. The city, conceding this, urges, however, that sections 7 and 10 of article 9 of the Pennsylvania Constitution have been violated by the act in question and it is, therefore, void.

■ Section 7 provides that "The General Assembly shall not authorize any * * * city * * * to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual." The city argues that by the act in question the Legislature has authorized it to appropriate money for the plaintiff and the other corporations and individuals which own its improvement bonds. It is a sufficient answer to this argument, however, to point out that the constitutional provision in question was directed to a totally different situation (Brooke v. Philadelphia, 162 Pa. 123, 29 A. 387, 24 L.R.A. 781), and that the appropriation impliedly authorized by the act is only for the payment of bonds issued by the city to pay for a public improvement

which it was authorized by law to pay for out of public funds in the first instance, 53 P.S.Pa. §§ 11008–11010. Under these circumstances, it seems clear that section 7 has no application. Veterans' Welfare Board v. Jordan, 189 Cal. 124, 208 P. 284, 22 A.L.R. 1515; American Company v. City of Lakeport, 220 Cal. 548, 32 P.2d 622. In the case just cited the court said (220 Cal. 548, at page 556, 32 P.2d 622, 626): "Article 4, § 31, of the Constitution, prohibits any gift or loan of public moneys; and it is argued that, if the city is compelled to pay the delinquent assessments, it will thereby make a gift of public funds to private bondholders. This precise question was considered by us in Stege v. City of Richmond, 194 Cal. 305, at page 318, 228 P. 461, and we there said: 'The argument assumes that in the improvement of streets the work is a private matter. On the contrary, such work is for a public purpose. The city might have expended its general funds for that purpose.' It is well settled that funds directed toward a public purpose are not within the constitutional prohibition merely because of incidental benefits to individuals. Veterans' Welfare Board v. Jordan, 189 Cal. 124, 208 P. 284, 22 A.L.R. 1515."

The situation is similar to that which arises when an act is passed validating a municipal bond issue which is invalid by reason of defects in the procedure by which it was authorized. Such acts, although authorizing payment to bondholders who had no valid claim against the municipality, have been upheld in Pennsylvania. Swartz v. Carlisle Borough, 237 Pa. 473, 85 A. 847, Ann.Cas.1914B, 458; Palmer's Appeal, 307 Pa. 426, 161 A. 543. So also have acts been upheld which authorize municipalities to pay claims for work done without previous authority of law, often called moral claims. Kennedy v. Meyer, 259 Pa. 306, 103 A. 44. In the case just cited the court said (259 Pa. 306, at page 314, 103 A. 44, 46): "Further on the opinion states: 'Article 9, § 7, of the Constitution prohibits the Legislature from authorizing the appropriation of money or the loaning of credit by a county [city, etc.] to any corporation or individual; the payment of the present claim does not violate that section in any sense.' We may add to this brief quotation that the act of 1917, supra [36 P.S.Pa. §§ 2713, 2714], does not treat the obligations with which it deals as gratuities, such as contemplated by this constitutional inhibi-

tion, but as moral obligations that have ceased to be legal ones merely because of defects in the statute which authorized them. If the authority for payment contained in the act before us is a violation of this section of the Constitution, then all curative acts and ordinances which direct or authorize payments by municipalities for work done without previous authority of law would be void, which every one knows not to be the case." ·

My conclusion is that the act of 1933 is not rendered invalid by section 7 of article 9.

Section 8 of article 9 provides that "The debt of any * * * city, * * * except as provided herein, and in section 15 of this article, shall never exceed seven (7) per centum upon the assessed value of the taxable property therein, * * * nor shall any such municipality * * * incur any new debt, or increase its indebtedness to an amount exceeding two (2) per centum upon such assessed valuation of property, without the consent of the electors thereof at a public election in such manner as shall be provided by law."

█ It is clear that the act of 1933 was not intended to impose upon the city any indebtedness which would exceed the limits laid down in this section, since the proviso at the end of the act expressly stipulates to the contrary. Furthermore, it might well be held, as the plaintiff contends, that the only limitation contained in section 8 which is binding upon the Legislature, as contrasted with a limit imposed upon municipal action, is the 7 per cent. limit. Certain it is that the 2 per cent. limit is by its terms only a limitation upon action by a municipality increasing its debt without the consent of the electors. However, it is unnecessary to decide this question since the city concedes that at the time of the passage of the act of 1933 the total amount of its indebtedness when added to the total amount of its outstanding improvement bonds did not exceed 2 per cent. of the assessed value of the property within the city. It follows that the limiting proviso of the act of 1933 does not prevent its application to the bonds involved in this suit.

Section 10 of article 9 of the Constitution provides that any "municipality incurring any indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years." The city strongly urges that, since the act of 1933 does not impose or require the city to impose an annual tax sufficient to pay the interest and principal of the improvement bonds within thirty years, it violates this constitutional provision.

█ Here again, however, it is seen that this constitutional provision refers to action by the municipality and not by the Legislature. The indebtedness to which it refers is indebtedness voluntarily incurred by the municipality and not indebtedness imposed upon the municipality by law. There is here a clear distinction which has been frequently recognized by the courts. Grant County v. Lake County, 17 Or. 453, 21 P. 447; American Company v. City of Lakeport, supra; Liberty National Bank v. County Excise Board, 175 Okl. 245, 52 P.2d 51. The meaning and effect of section 10 was determined by the Supreme Court of Pennsylvania in Ohlinger v. Maidencreek Tp., 312 Pa. 289, at pages 292, 293, 167 A. 882, 884, 90 A.L.R. 1227 in which the present Chief Justice said : "The Constitution does not grant the power to a municipality to incur indebtedness; the power comes from the Legislature; it is limited by section 8, of article 9 and regulated by section 10. The latter is a command to the township to provide, by the method therein specified, funds for the payment of an indebtedness, which the Legislature authorized within the limitation of the Constitution. The municipality's power is not therein affected, but rather its mode of exercise. The words 'at or before' are mandatory, but there is no provision stating that any indebtedness of the city shall be void if such a tax is not provided at or before the incurring thereof. The section is an explicit and express command to subdivisions of government to perform a duty, a duty which may be enforced by mandamus. Com. ex rel. Hamilton v. Select and Common Councils of Pittsburgh, 34 Pa. 496; East St. Louis v. Amy, 120 U.S. 600, 7 S.Ct. 739, 30 L.Ed. 798. The right to mandamus after money on a loan has been secured indicates that the duty imposed by the Constitution is a regulation of the exercise of the power and does not qualify the power itself. Section 10 is purely regulatory." It will thus be seen that, while the plaintiff· may have the right by mandamus to compel the city to impose a tax to meet the bonds here in question, the failure to impose such a tax does not bring the

act of 1933 into conflict with the constitutional provision or render void those of its provisions which impose indebtedness upon the city.

■ I, therefore, conclude that the act of 1933 was valid and effectual in making the improvement bonds involved in this suit valid and binding obligations and debts of the City of Chester. This extended review of the subject has been made necessary by the fact that the constitutionality and effect of the act of 1933 have never been considered by the appellate courts of Pennsylvania. The subject has, however, received the consideration of the court of common pleas of Northampton county, which in an opinion by President Judge Stewart fully upheld the constitutionality of the act. In re Indebtedness of City of Easton, 25 Northam.Law Rep., Pa., 347. I need only add that it is a settled principle of constitutional law in Pennsylvania that all doubts as to the constitutionality of statutes must be resolved in favor of their validity. The party who wishes to pronounce a law unconstitutional takes upon himself the burden of proving beyond all doubt that it is so. Powell v. Commonwealth, 114 Pa. 265, 7 A. 913, 60 Am.Rep. 350. "Nothing but a clear violation of the Constitution—a clear usurpation of power prohibited—will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void." Pennsylvania Railroad Co. v. Riblet, 66 Pa. 164, 169, 5 Am.Rep. 360.

My conclusion that the act of 1933 is valid makes it unnecessary to consider the second ground of liability urged by the plaintiff, which is that the city has been negligent in the levying of assessments, the issuance of bonds, and the collection and disbursement of funds to an extent which renders it liable generally for the face amount of the bonds with interest.

■ Each of the bonds is payable by its terms within ten years from the date of its issue and interest therein is payable semiannually. In the light of the provisions of the act of 1933, it must be held that the city is directly obligated to pay the interest on each of its improvement bonds semiannually when due and the principal thereof within ten years from the date of issue. Its obligation is not restricted to payment out of the proceeds of the paving assessments mentioned in the bonds, but may be enforced out of any other available funds in the city treasury. It follows that, if the

city has failed to pay either the semiannual interest when due or the principal of any of the bonds within ten years from their respective dates, the holders are entitled to bring suit against the city and recover judgment against it for the amounts so remaining unpaid.

■ I think it is otherwise, however, with respect to the principal of bonds issued within ten years and which have, therefore, not yet matured. The bonds contain no clause providing for acceleration of maturity of the principal in case of default by the city in performing its covenants. Therefore, the city is entitled to the full period of ten years in which to make payment, unless, perhaps, it should appear in the case of any particular bond that proceeds of the assessments which were pledged to its payment are or should be available in the city treasury in sufficient amount to retire it.

■ Nor do I think that negligence on the part of the city in making or collecting the assessments or administering the proceeds thereof would have the effect of accelerating the maturity of the bonds. Whatever may have been the case prior to the passage of the acts of 1929, 1931, and 1933, those acts have, as we have seen, converted these bonds into general obligations of the city. The holder is no longer required to look only to the proceeds of the assessments for his payment but now has the general funds of the city available for the payment of his debt. Consequently failure of the city to administer the assessment funds prudently and in the manner directed by the ordinances under which the bonds were issued, while perhaps a breach of duty which would support an action of mandamus, is clearly no longer such a material breach as would entitle bondholders to recover as damages the principal amount of their bonds prior to maturity.

It follows that the plaintiff in the present action is entitled to judgment against the city for the principal amount of all the improvement bonds held by it which were issued more than ten years ago and for all interest accrued and unpaid thereon. It is entitled in addition to judgment for the amount of all semiannual installments of interest accrued and unpaid on the improvement bonds held by it which have not matured.

I accordingly find in favor of the plaintiff and against the defendant, in an amount

to be assessed in accordance with this opinion.

█ The statements of fact contained in this opinion, together with the parties' requests for findings of fact which I have affirmed, may be considered the special findings of fact contemplated by section 649, Rev.St., 28 U.S.C.A. § 773.