[No. 35271. *En Banc.* March 15, 1962.]

JOHN R. MACY, *Individually and as Guardian ad Litem, Respondent,* v. TOWN OF CHELAN, *Appellant.**

* Reported in 369 P. (2d) 508.

FOSTER, J., FINLEY, C. J., and HUNTER, J., dissent.

*Hughes & Jeffers* and *Edward P. Ferris,* for appellant.
*Whitmore & Whitmore,* for respondent.

*A. C. Van Soelen, Arthur T. Lane,* and *Kahin, Carmody & Horswill (Edwin S. Thomas, Jr.,* of counsel), *amici curiae.*

ROSELLINI, J.—Jack A. Macy, who will be referred to hereafter as the respondent, was injured when he dived from a pier maintained by the appellant town in the waters of Lake Chelan, just off shore from a public park which it owned and maintained. The water was a little over six feet deep at the point where he dived, and the pier was 17.6 feet high. No warning signs were posted. However, the respondent was aware of the approximate depth of the water and of the fact that it was below the level at which the pier was designed to be used as a diving facility, inasmuch as he had to scale some eight feet of piling in order to reach the lower rung of a ladder attached to the piling. His awareness of the possible danger was also demonstrated by the fact that he asked a companion whether he thought it was safe to dive.

The water level in the lake rises each spring and falls after each summer, due to the activities of a local public utility district, which was licensed by the Federal Power Commission to use the top twenty-one feet of the water for power storage. The safety of the pier, for diving purposes, diminishes as the water level falls and increases as it rises. By July 4th of each year, the water reaches its maximum height. This accident occurred on May 23,

1958. Although the pier had been in use for many years, no divers had been injured before so far as the evidence disclosed. There was no evidence of a generally accepted or recommended standard of safety for such diving facilities.

In bringing this action, the respondent alleged that the pier was inherently dangerous and constituted a nuisance. The case was submitted to the jury on this theory, and the jury returned a verdict in which it answered interrogatories, saying that the pier was inherently dangerous if used for diving, that it constituted a nuisance, and would constitute a nuisance whether or not there were warning signs posted.

Error is first assigned to the denial of the appellant's motion to dismiss at the close of the evidence. This motion was founded upon the theory that the evidence had failed to disclose the existence of a nuisance of a type for which the appellant could be held liable, as well as the contention that contributory negligence was established as a matter of law.

We need not consider the latter contention inasmuch as we are convinced that the undisputed facts reveal a case grounded on negligence in the performance of a governmental function and the appellant is therefore entitled to the defense of governmental immunity.

In the recent case of *Kilbourn v. Seattle*, 43 Wn. (2d) 373, 261 P. (2d) 407 (1953), this court considered at length a proposal to judicially repeal the body of law which gives to municipal corporations immunity for acts of negligence of their agents and employees, and gave its reasons why it was convinced that such a reform must be initiated by the legislature. In that case, this court also set forth the distinction between the kind of nuisance for the creation and maintenance of which a municipal corporation may not escape liability, and the kind of negligence labeled "nuisance" for which it cannot be held.

In brief, we said that if the governmental body creates or maintains a condition or is guilty of an act or omission or use of property which is not permissible or

excusable under any circumstances, that is, a nuisance per se, it is liable, regardless of whether negligence of its agents or servants is involved. But if negligent commissions or omissions on its part result in a situation or condition that may, according to one of the many definitions of that word, be termed a "nuisance" under certain circumstances, the defense of governmental immunity will be sustained.

In the *Kilbourn* case, *supra,* we quoted with approval the following language from *Royston v. City of Charlotte,* 278 Mich. 255, 270 N. W. 288 (1936):

" 'Acts in the discharge of governmental functions which create a nuisance *per se* do not come within the immunity otherwise accorded. Want of care in maintenance, however, presents the question of negligence only, and not that of a public nuisance, which must rest on inherent danger even under the best of care.' "

Our research has revealed only one case concerned with a dangerous diving facility in a place of public amusement wherein liability was assessed on the nuisance theory, and that, of course, was a case involving a municipal corporation. *Hoffman v. City of Bristol,* 113 Conn. 386, 155 Atl. 499, 75 A. L. R. 1191 (1931), was a case in which the defendant city had constructed a diving board over opaque water, which was maintained at a constant level of three feet, and had posted no warning signs. The court held the theory of nuisance applicable because the city had created the condition of danger, that is, it had built the diving board over three feet of opaque water. The diving facility in that case was dangerous at all times, and there was no showing that the water level was not under the control of the city.

In cases involving privately owned swimming and diving facilities, at which admission fees are charged, it is firmly established that the owner is not an insurer of the safety of patrons but owes a duty of ordinary care to see that known dangerous conditions are made safe or to give adequate warning to enable his patrons to avoid them. A few of the most recent cases so holding, all of which pertain

to diving accidents, are: *City of Fort Worth v. Barlow,* (Tex. Civ. App.) 313 S. W. (2d) 906 (1958); *Webb v. Thomas,* 133 Colo. 458, 296 P. (2d) 1036 (1956); *Perkins v. Byrnes,* 364 Mo. 849, 269 S. W. (2d) 52, 48 A. L. R. (2d) 97 (1954); *Vukas v. Kuivira,* 166 Kan. 439, 201 P. (2d) 685 (1949); and *Johnson v. Bauer,* 292 Mass. 534, 198 N. E. 739 (1935). In *Ide v. City of St. Cloud,* 150 Fla. 806, 8 So. (2d) 924 (1942), where the defense of governmental immunity was apparently not available, a demurrer to a complaint alleging negligence in the maintenance of a bathing beach, was overruled, the court stating that the city was held to the same degree of care as private persons.

In our own jurisdiction, we have the definitive case of *Grove v. D'Allessandro,* 39 Wn. (2d) 421, 235 P. (2d) 826 (1951), wherein an action was brought against the operators of a beach resort for personal injuries sustained when the plaintiff dived off a tower and struck bottom because of the shallowness of the water. In sustaining a verdict for the plaintiff, this court stated the applicable rule of law to be that which pertains in any case involving a business invitee, quoting the same from *Leek v. Tacoma Baseball Club,* 38 Wn. (2d) 362, 229 P. (2d) 329 (1951):

" 'Generally speaking, the possessor of land is liable for injuries to a business visitor caused by a condition encountered on the premises only if he (a) knows or should have known of such condition and that it involved an unreasonable risk; (b) has no reason to believe that the visitor will discover the condition or realize the risk; and (c) fails to make the condition reasonably safe or to warn the visitor so that the latter may avoid the harm.' "

We think that if the appellant was at fault at all in this case, its fault was in failing to discover that the condition at the pier created an unreasonable risk of danger, if there was such an unreasonable risk, and in failing to warn the respondent of that danger. If it were guilty of any breach of duty at all, that breach was negligence. In allowing the jury to find that its fault was in creating a "nuisance," the trial court not only deprived the appellant of its cloak of governmental immunity (which it is

entitled to wear until the legislature decrees otherwise), but expanded the liability which it would otherwise have had—removing the defense of contributory negligence—and made of it an insurer of the public. We know of no principle of law or reason of public policy which would justify a holding that would place upon a municipality, which offers its recreational facilities to the public free of charge, a more onerous duty than that which rests upon a proprietor who provides the same facilities for private profit.

The judgment is reversed and the action dismissed.

OTT, J., concurs.

HILL, J., concurs in the result.

DONWORTH, J. (concurring in the result)—The majority opinion states that it is unnecessary to consider whether respondent was guilty of contributory negligence as a matter of law because it holds that appellant was entitled to the defense of governmental immunity because its acts were performed in the exercise of a governmental function.

In my view, appellant's motion to dismiss at the close of respondent's evidence plainly should have been granted because of respondent's own negligence (described in the majority opinion) which, as a matter of law, barred his recovery. Therefore, I see no need for us to consider the defense of governmental immunity.

Accordingly, I concur in the reversal of the judgment and the dismissal of respondent's action.

WEAVER, J., concurs with DONWORTH, J.

FOSTER, J. (dissenting)—I dissent.

The territorial legislature of 1869 enacted a statute which was again re-enacted in the code of 1881 and again in 1953 imposing upon cities and other political subdivisions vicarious liability for negligence. Nevertheless, the court today reaffirms a line of cases by which the court repeals the statute.

The reasons for my protest are accentuated by the enactment of Laws of 1961, chapter 136, p. 1680, abolishing the

state's immunity from tort liability, and providing instead that the state shall be liable for negligence the same as anyone else, and the enactment of the Federal Tort Claims Act of August 2, 1946, Title IV, chapter 753; 60 Stat. 842; 28 U. S. C. § 1346, imposing vicarious liability for negligence upon the United States, and like action by the British Parliament the following year, Crown Proceedings Act of 1947, 10 & 11 Geo. VI., chapter 44; 6 Halsbury's Statutes of England (2d ed.) 46.[1]

That our statute was copied verbatim from a very early Oregon statute was judicially acknowledged in *Kirtley v. Spokane Cy.*, 20 Wash. 111, 115, 54 Pac. 936:

" . . . The state of Oregon from an early date had a statute identical in its terms with that in force in this state, and, while such statute existed in that state, it was held to confer a right of action against the county for neglect in allowing bridges to be out of repair. *McCalla v. Multnomah County*, 3 Ore. 424; and again affirmed in *Sheridan v. City of Salem*, 14 Ore. 328 (12 Pac. 925). . . . Our statute appears to have been taken from Oregon after it had been construed by the courts of that state."

But the history of the problem in Oregon is refreshingly different because the courts of that state exercised an admirable degree of judicial self-restraint which is still conspicuously absent here. In a series of cases, the Oregon Supreme Court called attention to the decisional law elsewhere that, in the absence of statutes, political subdivisions were not liable for negligence because the state itself was immune. In consequence, the Oregon legislature abolished the tort liability of the political subdivisions, including cities.

In *Grant Cy. v. Lake Cy.*, 17 Ore. 453, 460, 21 Pac. 447, the matter was summarized as follows:

"It is unnecessary to say that the logic of that decision was not appreciated by the members of the bar; but its doctrine was enforced until the people of the various counties got tired of having to pay the damages to unscrupulous

---

[1] The Supreme Court of Michigan in September, 1961, buried the doctrine of governmental immunity. *Williams v. Detroit*, 364 Mich. 231, 111 N. W. (2d) 1.

claimants for pretended injuries, in consequence of alleged defects in roads and bridges, and the legislature concluded to change it, by declaring, in the emphatic language of said section 350 of the present code, that 'an action may be maintained against any of the organized counties of this state, upon a contract made by such county in its corporate character, and within the scope of its authority, *and not otherwise.*' "

Here, however, instead of repealing the statute, the legislature re-enacted it in 1953.

Laws of 1953, chapter 118, § 2, p. 232 (codified RCW 4.08.120), re-enacted the territorial statute which abolished the defense of sovereign immunity of incorporated towns and provided that such municipalities shall be liable for negligence the same as anyone else.

"An action may be maintained against a county or other of the public corporations mentioned or described in RCW 4.08.110, either upon a contract made by such county, or other public corporation in its corporate character and within the scope of its authority, *or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation.*" (Italics mine.)

The public corporations mentioned in RCW 4.08.110 are:

" . . . *any county, incorporated town, school district or other public corporation of like character* . . . " (Italics mine.)

This court, however, has usurped the legislative function by itself repealing the statute. *Kilbourn v. Seattle,* 43 Wn. (2d) 373, 261 P. (2d) 407, recognized that the legislature, by statute, had made municipalities liable for negligence the same as anyone else. The court there stated:

"The statute in question dates back to 1869, and is found, also, in practically the same words, in the code of 1881. It became the law of the state of Washington by virtue of our state constitution, Art. XXVII, § 2.

"That this statute applies to incorporated towns as distinctly and specifically as it does to counties and school districts is apparent. We recognized that such was the case in our opinion in *Howard v. Tacoma School Dist. No. 10,* 88 Wash. 167, 152 Pac. 1004 (1915), wherein we pointed out that two lines of decisions had been developed, in one

of which, dealing with counties and school districts, it had been held that the statute abrogated the common-law rule of immunity from liability for injuries occurring through negligent performance or omissions to perform governmental duties, and in the other, dealing with incorporated towns and cities, the statute had been ignored and it had been held that incorporated towns and cities were entitled to immunity from liability under such circumstances. We at that time refused to overrule this latter line of cases because to do so

" ' . . . would be to unsettle the law of damages as it has been applied to corporations purely municipal almost from the beginning of statehood';

and we decided that the only practicable course was

" ' . . . to uphold both lines of precedent as applied respectively to the two classes of corporations in the adjudicated cases.' "

But it was there decided that, although the statute made municipalities liable for negligence the same as anyone else, such statute had been judicially repealed, and *stare decisis* precluded the overruling of such cases. The court now again reaffirms the judicial usurpation of the legislative function.

My dissent in *Windust v. Department of Labor & Industries,* 52 Wn. (2d) 33, 46, 323 P. (2d) 241, advanced the view that, after a statute had been judicially construed and thereafter re-enacted, the judicial construction of the statute became an integral part of the legislative act. But the court there flatly held that the doctrine of *stare decisis* does not apply to the interpretation of statutes and overruled a long line of cases of twenty-five years standing.

The court there declared:

"Let it be understood that we now follow the language of the statute, which is the only authoritative statement of the law, . . ."

and, further:

"The gravity of substantial judicial encroachment upon the legislature, under the guise of following the doctrine of *stare decisis,* warrants a reference to the admonition in *Petersen v. Department of Labor & Industries, supra* [40 Wn. (2d) 635, 245 P. (2d) 1161], that 'Statutory cases have a fixed base from which we always start.' It may be added

that only the *statute* contains the authoritative language in which the law is couched. A constant paraphrasing of the statutes by the court, such as is done in the *McCormick* case [7 Wn. (2d) 40, 108 P. (2d) 807], initiates the process exemplified in *Ashford v. Reese, supra* [132 Wash. 649, 233 Pac. 29], by which an accumulation of small changes overrules the law. By that process, more and more weight is inevitably given to opinions and less and less to the statute until, as in the *McCormick* case, the law is all opinion and no statute.

"Since the doctrine of *stare decisis* is not applicable to a case of statutory interpretation, we advert directly to the language of the statute to ascertain if there has been an *injury* in the instant case."

Judge Donworth was equally emphatic in his separate concurring opinion, for he said:

"In my opinion, the doctrine of *stare decisis* does not require us to perpetuate the error of the *Metcalf* and *McCormick* cases. As we said in *In re Yand's Estate*, 23 Wn. (2d) 831, 162 P. (2d) 434, quoting with approval from a decision of the New York court of appeals:

" ' "But the doctrine of *stare decisis,* like almost every other legal rule, is not without its exceptions. It does not apply to a case where it can be shown that the law has been misunderstood or misapplied, or where the former determination is evidently contrary to reason. The authorities are abundant to show that in such cases it is the duty of courts to re-examine the question. Chancellor Kent, commenting upon the rule of *stare decisis,* said that more than a thousand cases could then be pointed out, in the English and American reports, which had been overruled, doubted or limited in their application. He added that 'it is probable that the records of many of the courts of this country are replete with hasty and crude decisions; and in such cases ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error.' " *Rumsey v. New York & N.E.R. Co.,* 133 N. Y. 79, 30 N. E. 654, 28 Am. St. 600.' "

Consequently, the court now has two lines of cases to be applied, one when it approves of a statute and the other when it disapproves.

This, then, is a paradox. In *Kilbourn, supra* (1953), the court said that, although the legislature had made cities liable for negligence, it would not permit such a recovery. The reason advanced was that prior decisions immunized municipal corporations for negligence, notwithstanding that the statute specifically authorized recovery. The court held that such decisions could not be overruled. This, in the jargon of the law, is called *stare decisis*, but in point of actual fact is judicial usurpation of legislative power.

Five years later, the very antithesis was announced in *Windust*. It was there specifically held that the rule of *stare decisis* did not apply to cases interpreting statutes. Since then, judicial overthrow of the specific statute that cities are vicariously liable for negligence cannot be justified.[2]

There is no vested right to continue a series of judicial mistakes. In 1869, the legislature enacted that specified political units should be vicariously liable for negligence. The decisions of this court applied that statute to some of the specified political units but declined to apply the mandate to cities and towns. Such is a completely arbitrary exercise of judicial power.[3]

Cardozo said:

" . . . The constitution overrides a statute, but a statute, if consistent with the constitution, overrides the law of judges. In this sense, judge-made law is secondary and subordinate to the law that is made by legislators. . . ." Hall, Selected Writings of Benjamin Cardozo, 110.

[2] 2 Harper & James, The Law of Torts, 1619, § 29.6, Liability of Municipal Corporations.

[3] " 'The emphasis which a certain school of legal thought, whose origin in America can be traced to the works of Professor John Chipman Gray, has placed.upon the power of the judge to declare the law, has led some advanced thinkers to suggest that the judge has a right to remake the law as he sees fit. According to them, the courts can and should act arbitrarily in laying down principles which it is thought will do more social justice than will some of the long-established rules of the past. Like a medieval monarch, the judge is above the law which he lays down for his subjects. Few judges have claimed this power for themselves, but there are legal writers who have done it for them.' [Goodhart, Essays in Jurisprudence and Common Law 268 (1931).]" 1961 U. Ill. L. F. (No. 3) 476, 477.

The court's opinion states:

"In the recent case of *Kilbourn v. Seattle,* 43 Wn. (2d) 373, 261 P. (2d) 407 (1953), this court considered at length a proposal to judicially repeal the body of law which gives to municipal corporations immunity for acts of negligence of their agents and employees, and gave its reasons why it was convinced that such a reform must be initiated by the legislature. . . ."

It is now idle to say that to overrule *Kilbourn v. Seattle, supra,* and cases preceding it " ' . . . would be to unsettle the law of damages as it has been applied to corporations purely municipal almost from the beginning of statehood' . . ." for by Laws of 1961, chapter 136, p. 1680, the legislature has waived the state's immunity for negligence. The various political subdivisions have no independent sovereignty but have enjoyed, by judicial decision only, the extension of the state's immunity. By the withdrawal of the state's immunity, the corresponding immunity of lesser political units was, likewise, withdrawn so that *Kilbourn v. Seattle, supra,* is no longer controlling on any hypothesis. Such was the decision of the highest court of New York under comparable circumstances upon enactment of the New York Tort Claims Act (New York Court of Claims Act of 1939, 2 (1939) Laws of New York, chapter 860, p. 2178). In *Bernardine v. New York,* 294 N. Y. 361, 365, 62 N. E. (2d) 604, 161 A. L. R. 364, the New York Court of Appeals decided:

" . . . Section 8 of the Court of Claims Act says: 'The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations'. The gist of this waiver and consent of the State has been operative since 1929, and is limited only by the incidental procedure prescribed in article II of the same Act. None of the civil divisions of the State— its counties, cities, towns and villages—has any independent sovereignty (see N. Y. Const., art. IX, § 9; *City of Chicago v. Sturges,* 222 U. S. 313, 323; *Keifer & Keifer v. R. F. C.,* 306 U. S. 381. Cf. *Gaglio v. City of New York,* 143 F. 2d 904). The legal irresponsibility heretofore en-

joyed by these governmental units was nothing more than an extension of the exemption from liability which the State possessed. (*Murtha v. N. Y. H. M. Col. & Flower Hospital,* 228 N. Y. 183, 185.) On the waiver by the State of its own sovereign dispensation, that extension naturally was at an end and thus we were brought all the way round to a point where the civil divisions of the State are answerable equally with individuals and private corporations for wrongs of officers and employees,—even if no separate statute sanctions that enlarged liability in a given instance. (*Holmes v. County of Erie,* 291 N. Y. 798.) . . ."

Earlier, the appellate division of the New York Supreme Court in *McCarthy v. City of Saratoga Springs,* 269 App. Div. 469, 56 N. Y. S. (2d) 600, reached the same conclusion and declared:

"In the earlier decisions, the immunity from liability of civil divisions within the State for the acts of officials and employees while performing governmental functions existed because of the historical immunity of the State. A city or a county performing governmental functions does so under delegated powers from the State, and acts under the same immunity, if any, enjoyed by the State. The immunity of a city derived from the State's immunity ceased to exist after the enactment of the Court of Claims section (*supra*) [§ 12-a of the former Court of Claims Act (now § 8)]. (*Holmes v. County of Erie,* 266 App. Div. 220, affd 291 N. Y. 798.) . . ."

This action should not be dismissed, but a new trial should be ordered with directions to proceed upon the theory of negligence, in which event the defense of contributory negligence is available.

FINLEY, C. J., and HUNTER, J., concur with FOSTER, J.

---

July 16, 1962. Petition for rehearing denied.