JOHN FAHEY, AN INFANT, BY HIS GUARDIAN *AD LITEM*, THOMAS FAHEY, AND THOMAS FAHEY AND VIRGINIA FAHEY, HIS WIFE, INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

GERALD MARK WILLIAMS, BY HIS GUARDIAN *AD LITEM*, JERRY WILLIAMS, AND JERRY WILLIAMS, INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. BOROUGH OF RED BANK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued November 20, 1967—Reargued June 4, 1968—

Decided June 28, 1968.

104

*Mr. Sigmund Auerbach* argued the cause for plaintiffs-appellants Fahey (*Mr. James G. Lepis,* on the brief).

*Mr. T. James Tumulty* and *Mr. Irving I. Vogelman* argued the cause for defendant-respondent City of Jersey City (*Mr. James H. Dowden,* on the brief).

*Mr. Frank A. Pelliccia* argued the cause for plaintiffs-appellants Williams (*Mr. Charles B. Klitzman,* attorney; *Mr. Pelliccia,* of counsel).

*Mr. Stephen J. Foley* argued the cause for defendant-respondent Borough of Red Bank (*Messrs. Campbell, Mangini, Foley & Lee,* attorneys; *Mr. Michael J. Cernigliaro,* on the brief).

The opinion of the court was delivered by

SCHETTINO, J. These two cases have been consolidated as each involves the question of municipal immunity from tort actions arising out of the construction and maintenance of public playgrounds and recreational facilities. They present similar factual patterns and legal issues.

On August 28, 1964, infant plaintiff in A–43, John Fahey, then 11 years of age, was playing in the playground area of a public park owned and maintained by defendant Jersey City. While walking across the balancing bar of a seesaw, the youth fell, sustaining injuries for which suit was filed against defendant in the Law Division.

Defendant's subsequent motion to dismiss was granted on the basis that *R. S.* 40:9–2 conferred immunity upon the municipality for suits arising out of the maintenance of a public playground. In an unreported opinion the Appellate Division affirmed and we granted certification. 48 *N. J.* 448 (1967).

On September 9, 1964, infant plaintiff in A–44, Gerald Mark Williams, then age three, went with other children to a portion of the municipal park in the Borough of Red

Bank known as "Candy Cane City." Among the swings, slides, and other recreational equipment contained in the park was a "firemen's slide." This consisted of a platform, approximately 12 feet high, with a circular hole in the middle and a pole running from the ground up through the center of the hole in the platform. Children were apparently accustomed to climbing the ladder leading to the platform and sliding down the pole to the ground. On this occasion, however, the Williams child fell from the platform to the ground, injuring himself.

In the subsequent damage suit against the municipality, the trial court granted defendant's motion for summary judgment, once again on the basis that *R. S.* 40:9–2 constituted an absolute bar to the action. In an unreported opinion the Appellate Division affirmed and we granted certification. 48 *N. J.* 574 (1967).

I

The statute in question, *R. S.* 40:9–2, reads as follows:

"No municipality or county shall be liable for injury to the person from the use of any public grounds, buildings or structures. any law to the contrary notwithstanding."

The first question is whether public recreational areas of the type herein involved fall within the statutory category of "public grounds, buildings or structures." This inquiry is necessary only because *R. S.* 40:9–2 has, in the past, been read not to include certain municipal properties—principally streets and other thoroughfares—which might literally be viewed as "grounds" within the legislative grant of immunity. *Schwartau v. Miesmer,* 50 *N. J. Super.* 399 (*App. Div.* 1958) (public street) ; *Selph v. Morristown,* 16 *N. J. Misc.* 19, 195 *A.* 862 (*Sup. Ct.* 1938) (pedestrian walk) ; *Cohen v. Town of Morristown,* 15 *N. J. Misc.* 288, 190 *A.* 851 (*Sup. Ct.* 1937) (footbridge) ; *Hammond v. County of Monmouth,*

117 *N. J. L.* 11 (*Sup. Ct.* 1936) (culvert); *Satink v. Holland Township,* 28 *F. Supp.* 67 (*D. N. J.* 1939) (highway).

 Parks, playgrounds, and other open recreational areas are certainly "grounds" within the ordinary and general meaning of that term. The very composition of the word play*ground* makes that fact self-evident. And, "in the absence of an explicit indication of a special meaning, the words of a statute are to be given their ordinary and well understood meaning." *Safeway Trails, Inc. v. Furman,* 41 *N. J.* 467, 478 (1964), *certiorari* denied 379 *U. S.* 14 (1964); *Lane v. Holderman,* 23 *N. J.* 304, 313 (1957).

 The term "public grounds" in *R. S.* 40:9-2 is not employed in any special or technical sense.[1] We therefore conclude that municipal parks and playgrounds of the sort involved here are public grounds within the meaning of *R. S.* 40:9-2. We also consider the recreational equipment involved to be a part of the municipal parks' grounds or structures. These conclusions are reinforced by the constitutional direction that laws concerning municipal corporations be liberally construed in their favor. *N. J. Const., Art.* IV, § VII, *par.* 11.

## II

 Our cases have held that *R. S.* 40:9-2 embodies the common law distinction between governmental and proprietary municipal functions, so that it only insulates municipalities from liability for injuries from the use of buildings and grounds devoted to governmental functions. *Weeks v. Newark,* 62 *N. J. Super.* 166, 174 (*App. Div.* 1960), affirmed *per curiam* 34 *N. J.* 250 (1961); *Wall v. Hudson County Park Com.,* 80 *N. J. Super.* 372, 376 (*App. Div.*), certification denied 41 *N. J.* 198 (1963); *Falcone v. Bd.*

---

[1] Even in contexts other than an immunity statute, the statutory words "public grounds" have been held to include parks and playgrounds. See *Buck v. City of Winona,* 271 *Minn.* 145. 135 *N. W.* 2d 190, 194 (1965); *Gottesman v. City of Cleveland,* 142 *Ohio St.* 410, 52 *N. E.* 2d 644, 645 (1944).

*Education, Newark,* 17 *N. J. Misc.* 75, 4 *A.* 2d 687 *(C. P.* 1939)*; Leeds v. Atlantic City,* 13 *N. J. Misc.* 868, 181 *A.* 892 *(Cir. Ct.* 1935)*.* Thus, despite the dissatisfaction with the artificial governmental-proprietary distinction which this and other courts have expressed on so many occasions, the test must be retained for purposes of *R. S.* 40:9–2.

The parties have devoted considerable attention to the question of whether the maintenance of public parks and playgrounds should be classified as a governmental or proprietary function for purposes of municipal tort immunity. On this issue, there is a sharp division of authority in other jurisdictions. See *Rhyne, Municipal Law* 777 (1957); Annot., 142 *A. L. R.* 1340 (1943); 18 *McQuillin, Municipal Corporations* (3d ed. 1966)*,* § 53.112, *pp.* 433–43.[2]

■ The criteria for determining whether a particular function is governmental or proprietary have been articulated on many occasions. See *Cloyes v. Delaware Township,* 23 *N. J.* 324, 332–34 (1957); *Stringfield v. City of Hackensack,* 68 *N. J. Super.* 38, 41–44 *(App. Div.* 1961); *Weeks v. Newark, supra; Caporossi v. Atlantic City,* 220 *F. Supp.* 508 *(D. N. J.* 1963)*,* affirmed 328 *F.* 2d 620 *(3d Cir.* 1964)*, certiorari* denied 379 *U. S.* 825, 85 *S. Ct.* 51, 13 *L. Ed.* 2d 35 (1964). Among the factors denoting a governmental function are the fact that an activity was historically engaged in by local government; that it is uniformly so furnished today; that it could not be performed as well by a private corporation; that it is not undertaken for profit or for revenue; and, most significantly, that it is within the imperative public duties imposed on a munici-

---

[2] Compare *De Simone v. City of Philadelphia,* 380 *Pa.* 137, 110 *A.* 2d 431 (1955); *Caldwell v. Village of Island Park,* 304 *N. Y.* 268, 107 *N. E.* 2d 441 (1952), viewing a park as a proprietary enterprise, with *Carlisi v. City of Marysville,* 373 *Mich.* 198, 128 *N. W.* 2d 477 (1964); *Wohlleben v. City of Park Falls,* 23 *Wis.* 2d 362, 127 *N. W.* 2d 35 (1964); *Crisafi v. City of Cleveland,* 169 *Ohio St.* 137, 158 *N. E.* 2d 379 (1959); *Macy v. Town of Chelan,* 59 *Wash.* 2d 610, 369 *P.* 2d 508 (1962), all viewing maintenance of parks as a governmental function.

pality as agent of the State. *Cloyes v. Delaware Tp.,* 23 *N. J.* 324, 333 (1957); *Stringfield v. City of Hackensack, supra,* 68 *N. J. Super.,* at *p.* 44.

Applying these criteria set forth in *Stringfield* and other modern cases, we cannot view the operation of municipal parks and playgrounds as other than a governmental function. "Public parks, open spaces, playgrounds and places for public resort, rest and recreation are facilities anciently provided by local government." *Coleman v. Edison Tp.,* 95 *N. J. Super.* 600, 604 (*App. Div.* 1967). And whether such municipal facilities are of ancient or modern origin, they are today so intimately related to the general welfare that scarcely a city exists without recreational areas set aside for public enjoyment. 10 *McQuillin, Municipal Corporations* (3*d ed.* 1966), § 28.50, *p.* 163. Private sources do not and probably cannot fulfill the public need for such areas. Further, there is no indication that the playground facilities in question were operated for profit, for revenue, or for any reason other than to provide for the public health and welfare. Also, while provision of parks and playgrounds may not be a statutory requirement (see *N. J. S. A.* 40:61–1; *N. J. S. A.* 40:61–22.21; *N. J. S. A.* 40:184–1; *N. J. S. A.* 40:37–201.1), the critical urban need for such recreational areas has, as a practical matter, made their provision a common practice of modern municipalities.

The case law on point in this State holds that public parks are operated as a governmental service. *Terranella v. Union Bldg. and Construction Co.,* 3 *N. J.* 443, 447 (1950); *Kuchler v. N. J. & N. Y. R. R. Co.,* 104 *N. J. L.* 333 (*E. & A.* 1928); *Bisbing v. Asbury Park,* 80 *N. J. L.* 416, 424 (*E. & A.* 1910). *R. S.* 40:9–2 does not overturn these precedents; on the contrary, it imbeds them in our law. To deny recompense to children injured on municipal playgrounds by reason of the nature or condition of the grounds may be a harsh result, but the result is dictated by *R. S.* 40:9–2. The amelioration of this situation must therefore come from the legislative branch.

## III

Plaintiffs' allegations of negligence boil down to a claim that the municipalities should have provided professional supervision for the playground areas in question. In the circumstances of these cases, liability must be denied because the employment of supervisors involves the type of governmental policy determination which must remain free from the threat of tort liability. See *Visidor Corp. v. Cliffside Park*, 48 *N. J.* 214, 224 (1966), *certiorari* denied 386 *U. S.* 972 (1967); *Hoy v. Capelli*, 48 *N. J.* 81 (1966); *Amelchenko v. Freehold Borough*, 42 *N. J.* 541, 555 (1964).

Affirmed, no costs.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.