99 N.J. Super. 1 (1968)
238 A.2d 203
THEODORE MIEHL, PLAINTIFF-RESPONDENT,
v.
JERRY DARPINO, DEFENDANT, AND THE CITY OF HAMMONTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1967.
Decided January 22, 1968.
*3 Before Judges KILKENNY, CARTON and FRITZ.
Mr. Harry Miller argued the cause for appellant (Messrs. Miller, Brone, Valore & McAllister, attorneys).
Mr. James L. Cooper argued the cause for respondent (Messrs. Arkus & Cooper, attorneys).
The opinion of the court was delivered by FRITZ, J.S.C. (temporarily assigned).
Defendant City of Hammonton appeals from a judgment entered against it and in favor of plaintiff upon a jury verdict, predicated upon certain municipal activities in connection with snow removal.
On January 13, 1964 a heavy snow fell on Hammonton. The blizzard was of such intensity that the assistant chairman of defendant's highway committee, in the absence of the chairman, authorized the hiring of independent local contractors to assist the municipal highway department in cleaning and clearing the snow from the streets throughout the community. This action was confirmed the same day by resolution of the municipal council.
The accident which produced this litigation occurred ten days later on January 23, 1964, at the intersection of Bellevue Avenue and Second Street. Bellevue Avenue is a portion of State Highway 54 where it passes through Hammonton. Second Street is a local street. During and immediately after the snowstorm the State Highway Department had undertaken *4 to plow Bellevue Avenue, and the municipality assumed the responsibility for plowing the "side streets," of which Second Street was one.
The evidence is sufficient to support a jury finding that an agent of the municipality "helped" the State Highway Department in its efforts, and that there were representatives of the municipality present at this particular intersection during both state and municipal activity at the time of and following the snowstorm. It is clear that the town undertook to remove the snow, including the snow which was plowed by the State.
The record also fairly supports a factual determination that a residual of snow remained at this intersection, piled partly on the sidewalk and extending over the curb and into the street. Plaintiff testified that on January 23 this residual at the corner of Bellevue and Second "went around the corner" and at its highest point near the center was 2 1/2 to 3 feet high. He stated that a "small, very narrow opening" existed at the corner, apparently a defile created by pedestrians in the ten days between the storm and the accident in question.
Plaintiff's testimony as to the manner in which the accident happened is substantially uncontroverted. He stepped from the sidewalk through the narrow opening in the snow-bank to the street, where he waited for some cars to pass. Looking to his right he noticed a car coming from the west on Bellevue Avenue and turning left into North Second Street "towards that spot where I was standing." This car, driven by one Darpino, was approximately 10 to 12 feet away when the plaintiff first saw it. Plaintiff testified:
"I beared to the left to try to get around on the side of this large pile of snow. I tried to escape the car coming, and that is when it was all over. I had been struck with a very glancing blow. It wasn't  ."
He further characterized his predicament as one of being trapped between the pile of snow and the car. He said that *5 prior to his seeing the car coming toward him he was on the roadway and not on any ice, and that it was the impact of the car which caused him to lose his balance and fall.
Darpino was originally a defendant but the claim against him was settled prior to trial, and the parties had stipulated that any judgment against the municipality would be limited to not more than half of any verdict obtained. The injuries were sufficiently serious to produce a verdict for $35,000, the quantum of which is not attacked in this appeal.
Defendant municipality appeals from the denial of its motions for judgment and for judgment n.o.v. or a new trial. Its attack on the judgment is three-pronged. It urges the absence of a duty on the part of the city, and invokes municipal immunity. It argues that even were there a duty, there is no proof of its breach. Finally, it contends that the purported breach was not, in any event, a sufficiently substantial factor in the production of the harm that followed to constitute a proximate cause of that harm.
Defendant's argument with respect to the absence of duty is predicated upon its theory that Amelchenko v. Borough of Freehold, 42 N.J. 541 (1964), confers absolute immunity upon a municipality with respect to any activity involving snow clearance and snow removal. We do not believe that Amelchenko has such a broad sweep.
Indeed, the Amelchenko case concerned itself with the failure of the defendant borough to remove any snow from the public parking lot upon which plaintiff fell. The defense consisted of a comprehensive and convincing demonstration that "the street department workmen and the borough equipment had been devoted around the clock to the street clearing task throughout the period of the snowstorm." The court held that the inability to reach this particular lot for snow removal purposes, despite a demonstration of concentrated activity in snow removal, did not under the circumstances constitute negligence, and that the scheduling of snow removal activity was a governmental function immune from tort liability. We have no doubt that its reference to "quality" *6 of governmental service was in the context of what was done quantitatively and as a matter of planning, rather than the manner in which that which was undertaken was performed.
In the present case plaintiff charges the municipality with having created a hazardous situation by the removal of snow in a manner whereby the residual was piled so as to block escape by a pedestrian threatened by a vehicle. Defendant could not escape liability if these charges were proved; a municipality does have a duty to refrain from the creation of a hazard in the public way without provision for adequate safeguards. Hayden v. Curley, 34 N.J. 420 (1961). Such is of the essence of "active wrongdoing," never protected by immunity from tort liability even under ancient concepts. Hart v. Board of Chosen Freeholders of Union, 57 N.J.L. 90 (Sup. Ct. 1894). "The common-law rule that a municipality is liable for the creation of a nuisance in a public way by its own positive misfeasance is embedded in our jurisprudence." Milstrey v. City of Hackensack, 6 N.J. 400, 408 (1951). For liability to attach it is not even necessary that the obstructive and dangerous instrumentality in what has been called the "hazard-complex" (Hartman v. City of Brigantine, 42 N.J. Super. 247, 259 (App. Div. 1956), affirmed 23 N.J. 530 (1957)) be solely the creation of the municipality. Coupling of municipal activity with the conduct of another in hazard-producing combination is enough. Latzoni v. City of Garfield, 22 N.J. 84 (1956).
Defendant does not quarrel with this law. It urges that the creation of the hazard by the city was not proved, and that the case is otherwise devoid of testimony characterizing anything it did do as negligent.
There was adequate proof to support a finding by the jury that the municipal authorities were responsible for the condition which existed; that a hazard was in fact created by the municipality, and that the known hazard was permitted to exist for an extended period of time. The tolerance of a hazard in a public way by a municipality, without effort on its part to protect the traveling public from the inherent *7 risks, is actionable. Bergen v. Koppenal, 97 N.J. Super. 265, 269 (App. Div. 1967). See Milstrey v. City of Hackensack, Latzoni v. City of Garfield, Hartman v. City of Brigantine, all supra.
This condition was necessarily of at least ten days' duration. There is no suggestion by defendant city that there was not amply sufficient time for it to have taken action to protect persons using the highway from dangers and risks inhering in such use.
Nor does such a concept do violence to the evolving doctrine relating to municipal immunity. It is clear that "even in the case of a so-called governmental activity, * * * immunity is no longer complete by any means." Hoy v. Capelli, 48 N.J. 81, 84 (1966). As was said in B.W. King, Inc. v. Town of West New York, 49 N.J. 318 (1967),
"* * * Municipal immunity from tort liability and the proprietary-governmental test have fallen into considerable disrepute. There is a consensus that most of the reasons for immunity have expired and that municipal liability should be subject to less restrictive limits. * * *.
"* * * The analytical approach ought not to be one of asking why immunity should not apply in a given situation but rather one of asking whether there is any reason why it should apply." (at pages 324, 325.)
A more vexatious problem is presented by defendant's insistence that its conduct may have resulted in the production of a condition but did not constitute a proximate cause of the occurrence. Its argument is that the real and only substantial cause for the accident was the operation of the automobile involved. A review of this contention requires regard for the uncontroverted testimony of the plaintiff, reproduced above in part, demonstrating that he was barred from escape from the path of the automobile and trapped by the snowbank in question.
Dean Prosser brings the persistent proximate cause problem into sharp focus by noting:
*8 "* * * There is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion. Nor, despite the manifold attempts which have been made to clarify the subject, is there yet any general agreement as to the proper approach. Much of this confusion is due to the fact that no one problem is involved, but a number of different problems, which are not distinguished clearly, and that language appropriate to a discussion of one is carried over to cast a shadow upon the others." Prosser, Torts (3d ed. 1964), § 41, p. 240.
Our Supreme Court has recently acknowledged the difficulties thus verbalized by Dean Prosser, and in a case turning, apparently, upon the simple conviction that "There should be no liability in [the type of injury there concerned]," agreed with a conclusion dating back to 1923 that "the determination of proximate cause by a court is to be based `upon mixed considerations of logic, common sense, justice, policy and precedent.' Powers v. Standard Oil Co., 98 N.J.L. 730, 734 (Sup. Ct. 1923), affirmed o.b. 98 N.J.L. 893 (E. & A. 1923)." Caputzal v. Lindsay Co., 48 N.J. 69, 77 (1966).
Such a distillation follows the employment, at one time or another, of many, if not all, of the traditional tests recognized by Dean Prosser (Prosser, op. cit., c. 9, p. 282 et seq.). See e.g. Hartman v. City of Brigantine, 42 N.J. Super. 247 (App. Div. 1956), affirmed 23 N.J. 530 (1957) (substantial factor); Bacak v. Hogya, 4 N.J. 417 (1950) (foreseeability); Rappaport v. Nichols, 31 N.J. 188 (1959) (policy considerations and balancing conflicting interests); Andreoli v. Natural Gas Co., 57 N.J. Super. 356 (App. Div. 1959) (substantial factor and foreseeability). But compare Lutz v. Westwood Transportation Co., 31 N.J. Super. 285 (App. Div. 1954) (foreseeability said to be unnecessary so long as the substantial factor test was met).
It would seem that Caputzal meets the problem head on and directs that logic, common sense, justice, policy and precedent should override the application of any specific test. Both a sound reason for the consideration of these factors and a workable rule for their application are to be found in *9 the discussion of the Restatement of Torts on the distinction between substantial cause and cause in the philosophic sense. It is there said that,
"* * * The negligence must also be a substantial factor in bringing about the plaintiff's harm. The word `substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called `philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called `philosophic sense,' yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes." Restatement, Torts 2d, § 431(a).
Whether proximate cause exists thus becomes simply a question of whether the ordinary mind, guided by logic, common sense, justice, policy and precedent, would consider that cause appears in a cause-and-effect context. Against the complaint that the subjectivity of such a test confounds predictability, we believe that such a vice, if it is indeed inherent, is preferable to participation in the "welter of confusion" decried by Prosser.
In the instant matter, we have no doubt that an "ordinary mind" employing logic and common sense might well consider an entrapping bunker of snow at least a concurring cause of an accident where the plaintiff victim was unable to escape the negligence of another because of the predicament produced by the snow. It can be said with even greater certainty that the minds of ordinary men could differ with respect to this proposition, whereby the question of proximate causation properly is a question of fact for the jury rather than a matter of law. McCray v. Chrucky, 66 N.J. Super. 124, 131 (App. Div. 1961). No considerations of justice, policy or precedent appear to suggest that we intrude upon the determination thus made here.
Finally, we see no merit in defendant's claim of error in the charge of the trial judge with respect to proximate cause. *10 While it might usefully have been related to the factual setting, as defendant suggests, the failure to do this did not significantly impede an intelligent resolution of the dispute by the jury in light of the substantially correct definition in the charge. Defendant's request, framed as it was in terms of "dominating or substantial factor," sought a charge not in accord with our law.
The judgment is affirmed.