157 N.J. Super. 67 (1978)
384 A.2d 543
MARY MANCA AND MICHAEL J. MANCA, SR., HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF HOPATCONG, IN SUSSEX COUNTY, A MUNICIPAL CORPORATION, AND COUNTY OF SUSSEX IN THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 1978.
Decided March 10, 1978.
*68 Before Judges HALPERN, LARNER and KING.
Mr. Leonard Adler argued the cause for appellants.
Mr. Richard L. Wade argued the cause for respondent Borough of Hopatcong.
Mr. Robert T. Morgenstern argued the cause for respondent County of Sussex (Messrs. Dolan and Dolan, attorneys).
The opinion of the court was delivered by LARNER, J.A.D.
Plaintiffs appeal from summary judgments entered in favor of both defendants. The propriety of this determination rests upon the construction of immunity provisions of the New Jersey Tort Claims Act (N.J.S.A. *69 59:1-1 et seq.) and their application to the facts developed in the proofs submitted in conjunction with the motions.
Preliminarily we note that the motions came on for oral argument on January 13, 1977 and were continued at the request of plaintiffs to March 18 to permit the submission of appropriate affidavits containing facts germane to the applicable legal issues. Plaintiffs thus had an adequate opportunity to present the factual basis for the cause of action alleged by them, and in fact did so by the presentation of an affidavit of an investigator referring to an interview with a police officer and the police report relating to the accident in question. This documentation sufficiently established the operative facts of plaintiffs' case for decision of the motion. Plaintiffs' suggestion that additional discovery should have been permitted, without pointing to any new significant facts which might be developed by such discovery, is manifestly without merit. The trial judge properly accorded to plaintiffs the most favorable inferences from the proofs and made his legal determination on that premise.
We are satisfied, on the assumption of the truth of plaintiffs' factual allegations and the most favorable inferences therefrom, that the issue is purely a legal one and that the summary judgments are justified.
Plaintiff Mary Manca was operating an automobile on Maxim Drive, a county road, in the Borough of Hopatcong on January 14, 1975 at about 1 P.M. She lost control of the vehicle when the right wheels became caught in the ice and snow on the shoulder of the road, causing her to run off the road over an embankment and into several trees.
The gravamen of plaintiffs' complaint against the County of Sussex is that it was negligent in its snow removal, whereby snow banks were created on the shoulder, thereby narrowing the passable road width and resulting in icy ruts, rendering it hazardous for vehicles. As to the Borough of Hopatcong, plaintiffs rested liability on the fact that a prior accident had taken place on the same road, and that the municipality *70 failed to do anything to eliminate the hazard after having actual and constructive notice of the same.
It is undisputed that on January 13 a snowstorm in the area left an accumulation of five to six inches of snow in the borough and that the county commenced plowing of all county roads around noontime and completed the operation by midnight of that date. On the morning of January 14 the weather was clear with the temperature dropping to 20° . In addition to snow removal the county also sanded some of the roads, including Maxim Road.
The immunity from liability for the consequences of allegedly negligent snow removal by a governmental entity was set to rest by the Supreme Court in Miehl v. Darpino, 53 N.J. 49 (1968), where a pedestrian was injured as a result of the creation of a pile of snow in connection with snow removal performed by representatives of the municipality. A jury trial resulted in a judgment against the municipality, which was affirmed by the Appellate Division on the thesis that immunity did not extend to active wrong-doing relating to a method of snow removal which created a hazard for the traveling public. 99 N.J. Super. 1 (1968). The Supreme Court reversed and directed the entry of judgment for the municipality. Justice Haneman, in an opinion for a unanimous court, clearly sustained municipal immunity as a matter of law in snow removal cases in the following language:
Snow is a common enemy interfering with normal pedestrian and vehicular traffic and on occasion results in a complete paralysis thereof. Drastically curtailing commerce and industry, it also endangers the general public safety as well, since police, fire, ambulance and medical services are unable to function efficiently throughout the entire community. The need for snow removal becomes imperative, and the municipality although not duty bound to so act, is under great pressure to exercise its governmental function and alleviate the condition. The cost of snow removal even to a limited extent is great.
Frequently, the area contiguous to plowed streets, including private driveways and sidewalks, is encumbered by additional snow through street plowing. To accede to plaintiff's thesis would be to require a *71 municipality to completely remove all snow and ice  to in effect "broom sweep" all the traveled portion of the streets, driveways and sidewalks where natural snowfall has been disturbed by any removal of street snow. Only in this manner could a municipality be certain that no accident could occur from the creation of a "new element of danger." Such a requirement would impose upon the municipalities of this state a duty not only impractical but also well-nigh impossible of fulfillment. The high cost of such an undertaking could make the expense of any extensive program of snow removal prohibitive and could result in no program or in an inadequate partial program. Patently, some cleaning of snow is better than none. The public is greatly benefited even by snow removal which does not attain the acme of perfection of "broom swept" streets. Relief from fallen snow which does not eliminate all danger of accident is better than none.
The unusual traveling conditions following a snowfall are obvious to the public. Individuals can and should proceed to ambulate on a restricted basis, and if travel is necessary, accept the risks inherent at such a time. To require the individual members of the public to assume the relatively mild additional danger presented by accumulated piles of snow resulting from street snow removal is a minor sacrifice to exact when the alternative could be municipal failure to eliminate the far greater danger caused by permitting snow to remain as deposited by natural forces. The public benefit arising from snow removal far outweighs any slight, private detriment which could accompany such a municipal act. [53 N.J. at 53-54]
See also, Amelchenko v. Freehold, 42 N.J. 541, 549-551 (1964); accord, Hoy v. Capelli, 48 N.J. 81, 87-91 (1966); Visidor Corp. v. Cliffside Park, 48 N.J. 214, 220-221 (1966), cert. den. 386 U.S. 972, 87 S.Ct. 1166, 18 L.Ed.2d 132 (1967).
The public policy rationale implicit in the foregoing cases was codified by the Legislature when it adopted the Tort Claims Act. N.J.S.A. 59:2-3, entitled "Discretionary Activities," provides:
a. A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity;
* * * * * * * *
c. A public entity is not liable for the exercise of discretion in determining whether or to seek or whether to provide the resources necessary for the purchase of equipment, the construction *72 or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services;
And more particularly applicable to the facts herein is N.J.S.A. 59:4-7 which reads:
Neither a public entity nor a public employee is liable for an injury caused solely by the effect on the use of streets and highways of weather conditions.
Plaintiffs urge that the Tort Claims Act in effect terminated the viability of judicial precedents predating its adoption and created liability under the fact pattern herein. We reject this contention. The statute was designed to codify the immunities of governmental entities and not to create new facets of liability. See Burg v. State, 147 N.J. Super. 316, 320 (App. Div. 1977).
Although the legislative declaration introducing the legislation provides that "public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein" (N.J.S.A. 59:1-2), it is manifest from the provisions of the legislation and the accompanying commentary that in many respects it is declaratory of existing common law as developed by judicial decisions. See Steward v. Magnolia, 134 N.J. Super. 312, 320-321 (App. Div.), certif. den. 68 N.J. 481 (1975); Blanchard v. Kearny, 145 N.J. Super. 246 (Law Div. 1976). The comment to N.J.S.A. 59:2-1(b) is also enlightening on this score. It points out:
Subsection (b) is intended to insure that any immunity provisions provided in the act or by common law will prevail over the liability provisions. It is anticipated that the Courts will realistically interpret both the statutory and common law immunities in order to effectuate their intended scope. [Emphasis supplied]
Furthermore, the act is bottomed upon a more restrictive approach to municipal liability in that immunity *73 prevails unless liability can be spelled out from a provision thereof. See English v. Newark Housing Auth., 138 N.J. Super. 425, 428 (App. Div. 1976); N.J.S.A. 59:2-1(a). It thereby reverses the policy approach expressed by the Supreme Court in 1967 in B.W. King, Inc. v. West New York, 49 N.J. 318, 325 (1967), wherein the court stated: "The analytical approach ought not to be one of asking why immunity should not apply in a given situation but rather one of asking whether there is any reason why it should apply." Instead, the approach under the statute dictates that the appropriate query is "whether an immunity applies and if not, should liability attach." See Comment to N.J.S.A. 59:2-1; Burg v. State, supra.
Our review of the pertinent provisions of the act fails to reveal a provision reflecting a legislative intent to abolish the immunity established in the area of discretionary municipal activities typified by Miehl v. Darpino, supra, 53 N.J. 49, and we therefore consider that precedent as controlling.
Plaintiffs assert that the opinions of this court in McGowan v. Eatontown, 151 N.J. Super. 440 (App. Div. 1977), and Meta v. Cherry Hill Tp., 152 N.J. Super. 228 (App. Div. 1977), certif. den. 75 N.J. 587 (1977), support their position. We disagree because these cases are distinguishable on their facts.
In McGowan, supra, the condition causing the injury resulted from the runoff of large quantities of water from a negligently constructed driveway contiguous to the highway. The water accumulation formed into ice, thereby creating a hazardous condition which remained without correction for several days before the accident. In fact, the local police had alerted their superiors and the State to these ice accumulations on various prior occasions, but nothing was done. The court found that the factual allegations might come within the provision establishing liability in N.J.S.A. 59:4-2 and 4, and thus set aside a summary judgment and remanded the case for plenary trial. As to the *74 specific immunity granted by N.J.S.A. 59:4-7, the court found that this section was inapplicable because the weather condition was not the sole cause of the icy pavement but was combined with other causes which are actionable under the statute.
Similarly, in Meta, supra, the court reversed a summary judgment in a case involving an accident caused by icy spots because of freezing of rainwater on the road. The court there rejected the applicability of the immunity of N.J.S.A. 59:4-7 on the ground that plaintiff's case was not based upon the allegation that her injury was caused solely by the icy condition of the road. Since the facets of negligence also involved failure to post warning signs or failure to block off the entire road after notice of the condition, the court found potential liability in the provisions of N.J.S.A. 59:4-4. Such a factual basis of liability is absent here. Furthermore, our case involves snow removal which was the essence of the cause of action in Miehl v. Darpino, supra, 53 N.J. 49.
Accordingly, we affirm the summary judgments entered below.