190 N.J. Super. 11 (1983)
461 A.2d 759
JOSEPHINE PATERNOSTER, INDIVIDUALLY AND AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF ALEXANDER PATERNOSTER, DECEASED; JAMES HUGHES AND ELIZABETH HUGHES, INDIVIDUALLY AND AS PARENTS AND GUARDIANS OF ARTHUR HUGHES, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY DEPARTMENT OF TRANSPORTATION, DEFENDANT-RESPONDENT-THIRD-PARTY PLAINTIFF, COUNTY OF OCEAN, DEFENDANT-RESPONDENT, TOWNSHIP OF DOVER, DEFENDANT-THIRD-PARTY PLAINTIFF,
v.
ROBERT AMBROSE AND ESTATE OF MARLENE WILLIAMS, THIRD-PARTY DEFENDANTS. ROBERT WILLIAMS, AS ADMINISTRATOR AD PROSEQUENDUM FOR THE HEIRS-AT-LAW OF MARLENE WILLIAMS, DECEASED, AND AS ADMINISTRATOR OF THE ESTATE OF MARLENE WILLIAMS, DECEASED, PLAINTIFF-APPELLANT,
v.
NEW JERSEY DEPARTMENT OF TRANSPORTATION, DEFENDANT-RESPONDENT-THIRD-PARTY PLAINTIFF, COUNTY OF OCEAN, DEFENDANT, TOWNSHIP OF DOVER, DEFENDANT-THIRD-PARTY PLAINTIFF,
v.
JAMES HUGHES, ESTATE OF ALEXANDER PATERNOSTER, AND ROBERT AMBROSE, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1983.
Decided June 20, 1983.
*12 Before Judges BISCHOFF, J.H. COLEMAN and GAULKIN.
Harold N. Hensel argued the cause for appellant Paternoster (Carluccio & Liston, attorneys; Daniel J. Carluccio, of counsel); William V. Kelly argued the cause for appellant Williams (Starkey, Kelly, Cunningham, Blaney & White, attorneys; Harold N. Hensel, on the joint brief).
Benjamin Clarke, Deputy Attorney General, argued the cause for respondent State of New Jersey (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, *13 Assistant Attorney General, of counsel; Benjamin Clarke, on the brief).
Thomas F. Kelaher argued the cause for respondent County of Ocean (Gelzer & Kelaher, attorneys; J. Michael Hartnett, on the brief).
Dominic Ravaschiere argued the cause for defendant Township of Dover (Lomell, Muccifori, Adler, Ravaschiere & Amabile, attorneys; Nancy C. Ferro, on the brief).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
Plaintiffs sued defendant public entities for damages resulting from a fatal automobile collision allegedly caused by high piles of snow which obstructed the motorists' view of the road at the intersection. The trial judge granted defendants' motions for summary judgment ruling that they enjoyed "a broad blanket immunity" for snow-removal activities.
The record before the trial judge on the summary judgment motions disclosed the following facts which were accepted as true.
On February 11, 1978, in the morning, Alexander Paternoster was driving his car on Route 70 and his wife, Josephine Paternoster, was a passenger in it. They were on their way from their home in Bricktown to Philadelphia; such was their weekly custom. At the same time James Hughes was driving his car east on Route 70 on his way to Bricktown. His son and Bill Fern were in the car as passengers. He was approaching the intersection of Massachusetts Avenue and Route 70 in Dover Township, Ocean County. Marlene Williams at the same time was operating her car on Massachusetts Avenue, turning onto Route 70 en route to her home. A multi-vehicle collision occurred with resulting personal injuries and two fatalities. Marlene Williams explained that she was unable to see at the intersection because of the large snow pile on her left, blocking *14 her vision. The circumstances resulting in the placement of the snow pile are relevant and material to this appeal.
The State was responsible for the maintenance of Route 70 at the location of the accident. Testimony of John McKelvey, a maintenance foreman for the Department of Transportation since 1963, indicated that he was alerted on February 5, 1978 of an upcoming snow storm. It snowed all day February 6th with flurries continuing on February 7. Total accumulation in the area of the accident was 15 to 20 inches.
The State was responsible for snow removal on Route 70 east and west of Massachusetts Avenue. The County was responsible for snow removal on Massachusetts Avenue north and south of Route 70. The state trucks started working on snow removal about 1:30 a.m. on February 6 and continued until 4 p.m. on that date. The State had hired independent contractors to assist in snow removal. Their work was terminated about noon on February 7. While the contractors were plowing, state vehicles were cleaning ramps and jughandles. McKelvey checked the intersection in question before the accident occurred. On February 10 he checked the view motorists would have at the intersection by backing up his truck on Massachusetts Avenue to determine how well he could see. McKelvey realized that someone unfamiliar with the intersection would have to risk venturing into the intersection in order to make appropriate observations for traffic conditions on Route 70. This was a bad intersection even without snow and McKelvey knew that people frequently entered the intersection without stopping at the stop sign. After lunch he instructed his crew to reduce the snow piles; they did so. He rechecked the view and was satisfied that the stop signs were clearly visible and the intersection safe.
That same day at 3:10 p.m. Dover Township Police called in a request for the State to further reduce the snow piles at the intersection. They thought the piles were still unsafe. McKelvey responded and returned to the intersection. He then and *15 there supervised additional clearing of snow and "took down" the snow piles still further.
A consulting engineer, after considering a survey of the intersection, photographs of the snow piles, depositions and viewing the intersection, expressed the opinion that the high piles of snow removed from the highway seriously impeded the view of operators of vehicles approaching this intersection from either direction along Route 70.
Two law suits were instituted against the opposing drivers, the State of New Jersey, the County of Ocean and the Township of Dover. The suits were consolidated; the State and the County moved for summary judgment. The trial judge ruled that he was "satisfied that the common law rule with respect to snow removal granting a broad blanket immunity was well established prior to the adoption of the Tort Claims Act and was not modified by the act." He granted summary judgment on behalf of the State and the County. And while the Township had not so moved, he dismissed the suit against the Township without prejudice to reinstatement should the Appellate Division reverse the summary judgments entered for defendants State and County.
There is nothing submitted to us to suggest that the suits against the drivers have been settled or dismissed and we assume they are still pending. It is therefore clear that the judgments under review are not final judgments (R. 2:4-1) and are therefore only appealable with leave granted. (R. 2:2-4). Plaintiffs did not seek leave and we could dismiss the appeal. Frantzen v. Howard, 132 N.J. Super. 226, 227-228 (App.Div. 1975). With a cautionary note that such conduct will not be condoned in the future, we sua sponte grant leave to appeal nunc pro tunc, R. 2:4-4(b)(2), and proceed to a consideration of the legal issues raised.
Prior to the enactment of the Tort Claims Act, N.J.S.A. 59:1-1 et seq., the Supreme Court decided the case of Miehl v. Darpino, 53 N.J. 49 (1968), which presented the following analogous *16 factual situation. In plowing the street, the City of Hammonton created snow piles two to three feet high on both sides of the street near an intersection. The piles were partly on the sidewalk and partly in the street itself. Plaintiff was attempting to cross the street and passed from the sidewalk through a narrow path in the pile, then stood on the side of the roadway waiting for an opportunity to cross safely. A car turning at the intersection veered toward him. Plaintiff tried to escape but could not scale the icy snow pile. Trapped between the car and the pile, he was struck.
The Supreme Court rejected plaintiff's argument that the city should be liable "when the hazard arising from a natural accumulation of snow is increased through the introduction of a new element of danger in the street snow removal." Id. at 52. The court stated its reasons as follows:
Snow is a common enemy interfering with normal pedestrian and vehicular traffic and on occasion results in a complete paralysis thereof. Drastically curtailing commerce and industry, it also endangers the general public safety as well, since police, fire, ambulance and medical services are unable to function efficiently throughout the entire community. The need for snow removal becomes imperative, and the municipality although not duty bound to so act, is under great pressure to exercise its governmental function and alleviate the condition. The cost of snow removal even to a limited extent is great.
Frequently, the area contiguous to plowed streets, including private driveways and sidewalks, is encumbered by additional snow through street plowing. To accede to plaintiff's thesis would be to require a municipality to completely remove all snow and ice  to in effect "broom sweep" all the traveled portion of the streets, driveways and sidewalks where natural snowfall has been disturbed by any removal of street snow. Only in this manner could a municipality be certain that no accident could occur from the creation of a "new element of danger." Such a requirement would impose upon the municipalities of this state a duty not only impractical but also wellnigh impossible of fulfillment. The high cost of such an undertaking could make the expense of any extensive program of snow removal prohibitive and could result in no program or in an inadequate partial program. Patently, some cleaning of snow is better than none. The public is greatly benefited even by snow removal which does not attain the acme of perfection of "broom swept" streets. Relief from fallen snow which does not eliminate all danger of accident is better than none.
The unusual traveling conditions following a snowfall are obvious to the public. Individuals can and should proceed to ambulate on a restricted basis, and if travel is necessary, accept the risks inherent at such a time. To require the individual members of the public to assume the relatively mild additional danger *17 presented by accumulated piles of snow resulting from street snow removal is a minor sacrifice to exact when the alternative could be municipal failure to eliminate the far greater danger caused by permitting snow to remain as deposited by natural forces. The public benefit arising from snow removal far outweighs any slight, private detriment which could accompany such a municipal act. [Id. at 53-54.]
The trial judge relied on the holding of Manca v. Hopatcong Bor., 157 N.J. Super. 67, 73 (App.Div. 1978), certif. den. 77 N.J. 480 (1978), that the Tort Claims Act had not abolished "the immunity established in the area of discretionary activities typified by Miehl v. Darpino" and he ruled there was a blanket immunity for snow removal activities. We disagree. Miehl v. Darpino is a pre-Tort Claims Act case. It speaks in broad general terms concerning liability of a public entity for injuries and losses related to hazards caused by snow removal activities. Since that decision was rendered the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., was enacted effective July 1, 1972 declaring the parameters of the liability of public entities for their negligence. The specific sections of that act relevant to the issues here presented have been discussed and applied by the Supreme Court in the recent cases of Brown v. Brown, 86 N.J. 565 (1981) and Costa v. Josey, 83 N.J. 49 (1980). We look to these recent cases for guidance.
As to the Manca case, the court there relied upon N.J.S.A. 59:2-3 a & c and did not mention subsection d in its opinion. That subsection provides:
d. A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public entity was palpably unreasonable. Nothing in this section shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial functions. [N.J.S.A. 59:2-3 d.]
While the Comment to N.J.S.A. 59:2-3 suggests that this provision was intended to codify the prior existing law of the State which immunized "both public entities and public employees for the exercise of discretion within the scope of employment," the plain language of the statute provides for public *18 entity liability where the determination of the public entity as to utilization or application of existing resources of equipment, facilities and personnel is "palpably unreasonable". The Comment provides as to subsection d:
Subsection (d) specifies certain discretionary activities of a public entity which lend themselves to a very limited judicial review. Thus this subsection incorporates the thesis that once resources have been provided a public entity may be liable for its determination of priorities in the application of such resources if that determination is palpably unreasonable. This thesis was adopted by the New Jersey Supreme Court in Bergen v. Koppenal, 52 N.J. 478, 246 A.2d 442 (1968).
This section also makes clear that once a public entity does act, then, "when it acts in a manner short of ordinary prudence, liability could be adjudged as in the case of a private party." Fitzgerald v. Palmer, 47 N.J. 106, 109, 219 A.2d 512 (1966). Thus this section adopts the test commonly applied by the courts that a public entity or public employee is liable for negligence in the performance of ministerial duties.
We are satisfied from a consideration of the record that the situation existing on the morning of February 11, 1978 at this intersection does not establish a discretionary immunity of the public entities as a matter of law. The roadway at the intersection was under the control of the State and County. They were well aware of the dangerous situation existing at the intersection and attempted to take remedial or corrective measures. Neither the State nor the County contends that they did not have the necessary equipment or qualified manpower to do the job properly. Nor has the State or County produced evidence of competing demands for its facilities, equipment or personnel. Subsection d is clearly brought into play and there is no "broad blanket immunity" for the public entities' snow removal activities. Brown v. Brown, supra, 86 N.J. at 578. Applicability of subsection d, namely the entity's exercise of discretion with respect to when and how it would proceed with respect to the removal of the obstruction to drivers' vision, does not per se establish immunity "for immunity is not available if `a court concludes that the determination of the public entity was palpably unreasonable.'" Ibid.
*19 The record is susceptible to the inference that the activities of the entities constituted "palpably unreasonable conduct." That issue should be submitted to the jury for determination, Brown v. Brown, supra, 86 N.J. at 580, and N.J.S.A. 59:9-1, and not resolved by the court on the record submitted on the summary judgment motion. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954); R. 4:46-2.
The trial judge rested his determination of immunity on a consideration of N.J.S.A. 59:2-3 a. As we indicated above he did not consider the requirement that even in discretionary matters liability may attach if the public entity acts in a "palpably unreasonable" fashion. In addition, the trial judge did not consider the effect or applicability of the last sentence of subsection d which provides that "[n]othing in this section shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial functions."
Whether or not the activities of a public entity constitute the exercise of a discretionary or ministerial function is not always easy to discern. Costa v. Josey, supra; Bergen v. Koppenal, 52 N.J. 478, 480 (1968); Fitzgerald v. Palmer, 47 N.J. 106, 109 (1966); Dix Bros. v. State, 182 N.J. Super. 268 (Law Div. 1981); Report of the Attorney General's Task Force on Sovereign Immunity (May 1972) at 43-44.
The court in Costa v. Josey, supra, 83 N.J. at 60, held that the discretionary function immunity should be limited to actual policymaking and coupled with a demonstration that there had, in fact, been an exercise of that discretion. We hold, as did the court in Costa v. Josey, that a summary judgment on the basis of a discretionary immunity under N.J.S.A. 59:2-3 was not warranted.
The trial judge did not rule upon whether the public entities were immunized from liability under N.J.S.A. 59:4-7 which provides:
59:4-7. Weather conditions; effect on use of streets and highways  immunity.

*20 Neither a public entity nor a public employee is liable for an injury caused solely by the effect on the use of streets and highways of weather conditions.
We note that the statute does not provide a broad blanket immunity for snow removal activities. This section of the act has been held not to create immunity when weather conditions are not the sole cause of a plaintiff's injuries. McGowan v. Eatontown Bor., 151 N.J. Super. 440, 447 (App.Div. 1977); Meta v. Cherry Hill Tp., 152 N.J. Super. 228 (App.Div.), certif. den. 75 N.J. 587 (1977); cf., Manca, supra, 157 N.J. Super. at 72.
The plaintiffs made a prima facie showing that (1) the property was in a dangerous condition at the time of the accident; (2) there was a proximate cause between the injury and the dangerous condition; (3) the dangerous condition created a reasonably foreseeable risk of the kind of injury that was incurred, and (4) the public entities had notice and sufficient time to protect against the condition or the condition had been created by an act or omission of a public employee acting within the scope of his employment. Brown v. Brown, supra, 86 N.J. at 575. Of course, in evaluating the proofs due consideration must be given to the fact expressed in Miehl, supra, that the task of snow removal is burdensome and a complete alleviation of the dangers associated with a snow fall is "well-nigh impossible." 53 N.J. at 54. The factfinder must assess not only the size and location of the snow pile and the asserted obstruction to view, but also such matters as the amount of accumulation, the amount and character of traffic on the roadway, the practicability or impracticability of further reducing, removing or relocating the snow pile, the time and resources available to do so and the competing demands on that time and those resources. Whether the conduct of the public entity or entities was "palpably unreasonable" under all of the circumstances is a question for jury determination. Brown v. Brown, supra, 86 N.J. at 580.
We express no opinion as to which of the public entities, if any, might be held responsible to plaintiffs.
Reversed and remanded for further proceedings consistent with this opinion.