ALEXANDER ROCHINSKY, PLAINTIFF-APPELLANT, AND MARY ROCHINSKY, PLAINTIFF, v. STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DEFENDANT-RESPONDENT, AND COUNTY OF ESSEX AND THE TOWN OF NUTLEY, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued December 1, 1986—Decided December 22, 1986.

[1]For more detailed discussions of a landlord's liability for breach of security, see Zacharis, *The Politics of Torts,* 95 Yale L.J. 698 (1986) and Lawrence, Dabertin & Ray, *Landlord Liability for Criminal Acts of Third Parties,* For the Defense, Dec. 1986 at 16.

Before Judges J.H. COLEMAN and R.S. COHEN.

*Barry Fredson* argued the cause for appellant (*Goldstein, Ballen, O'Rourke & Wildstein,* attorneys; *Barry Fredson* on the brief).

*Madeleine W. Mansier,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General

of New Jersey, attorney; *James J. Ciancia*, Assistant Attorney General, of counsel; *Madeleine W. Mansier* on the brief).

The opinion of the court was delivered by

J.H. COLEMAN, J.A.D.

The question again raised by this appeal is whether a public entity has absolute immunity as to actions against it for negligent snow removal. Alexander Rochinsky (plaintiff) filed a complaint against all defendants seeking damages as the result of a single motor vehicle accident which occurred on Route 21 in Nutley, Essex County, New Jersey on February 14, 1983. Plaintiff was a passenger in a motor vehicle which collided with a snowbank, left without any warning, in the travelled portion of the roadway. A snowstorm on February 11 and 12, 1983 deposited more than 16 inches of snow in the general area. The State of New Jersey, Department of Transportation (Department) and its contractors conducted the snow removal operations.

The Department moved for summary judgment claiming a blanket common law immunity from suit for negligent snow removal. The trial judge considered the conflict between *Paternoster v. N.J. Transp. Dept.*, 190 *N.J.Super.* 11 (App.Div. 1983), cert. den. 96 *N.J.* 258 (1983) and *Manca v. Borough of Hopatcong*, 157 *N.J.Super.* 67 (App.Div.1978), cert. den. 77 *N.J.* 480 (1978) and concluded that *Manca* was better reasoned. He therefore followed *Manca* and granted summary judgment to the Department. This partial summary judgment became a final judgment when all other claims were dismissed. Plaintiff has appealed. We now reverse.

On this appeal plaintiff argues that *Paternoster* should have been followed and a jury should have been permitted to decide whether the Department's conduct was palpably unreasonable. The Department argues, as it did before the motion judge, that it was entitled to summary judgment based upon the common law immunity for negligent snow removal recognized in *Miehl*

*v. Darpino,* 53 *N.J.* 49 (1968) which was found by *Manca* not to have been altered by the New Jersey Tort Claims Act, (the Act), *N.J.S.A.* 59:1–1 *et seq.* The core question for our determination is whether the *Miehl per se* immunity for negligent snow removal was changed by the Act, and if it was, whether an issue for the jury was presented. The answers require an analysis of the Act.

■ *N.J.S.A.* 59:2–1a confers immunity upon all public entities "[e]xcept as otherwise provided by this act [*N.J.S.A.* 59:1–1 *et seq.*]." The comment to this section states that the analytical approach for the judiciary *"should be whether an immunity applies and if not, should liability attach." See also N.J.S.A.* 59:2–1b. The Act further provides that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." *N.J.S.A.* 59:2–2a. The comment to this subsection provides:

> While the general approach of this act is immunity unless liability, this section provides a flexible liability provision which will permit the courts to adapt the principles established in this act to the particular circumstances of the cases coming before them. *In addition it permits the courts to continue to recognize common law immunities to the extent they are consistent with the provision of this act.* (Citations omitted) (Emphasis added).

When these two sections are read in conjunction with the comments, it is apparent to us that the Legislature intended for common law immunities to continue following enactment of the Act only "to the extent they are consistent with the provisions of this act." Consequently, other sections of the Act must be examined to see if the *Miehl* common law immunity survived the Act.

■ As we observed earlier, the analytical approach is that the governmental entity has immunity unless provided otherwise in the Act. The Act does provide otherwise. It establishes immunity for certain discretionary decisions made by public entities and their employees. *N.J.S.A.* 59:2–3a, b, c, and d.

Subsection a immunizes a public entity for injury resulting from the exercise of judgment or discretion "in making basic policy—the type made at the planning, rather than the operational, level of decisionmaking." *Brown v. Brown*, 86 *N.J.* 565, 577 (1981) (citing *Costa v. Josey*, 83 *N.J.* 49, 59 (1980)). Under subsection b immunity is established for legislative, administrative or judicial action or inaction of a legislative or judicial nature. Subsection c "is concerned ... with the exercise of discretion in determining whether to provide the resources necessary for certain purposes." *Brown v. Brown, supra,* 86 *N.J.* at 577. Subsection d "involves the exercise of discretion when, in the face of competing demands, the governmental body determines whether and how to utilize existing resources." *Ibid.* The comments to the foregoing subsections indicate that the Legislature was motivated to establish absolute immunity only for high-level policy decisions because "it cannot be a tort for government to govern." Comment to *N.J.S.A.* 59:2–3(b) (citing *Amelchenko v. Freehold Borough*, 42 *N.J.* 541, 550 (1964); *Willis, et al. v. Dept. of Cons. & Econ. Dev.*, 55 *N.J.* 534, 540 (1970); *Miehl, supra,* 53 *N.J.* 49; *Fahey v. City of Jersey City*, 52 *N.J.* 103 (1968); *Hoy v. Capelli*, 48 *N.J.* 81 (1966).

*Miehl* was decided before the Tort Claims Act was enacted by the Legislature. The *Miehl* court rejected any liability against a public entity for any discretionary determination associated with snow removal, including both high-level discretionary policy decision making as well as operational activities. *Miehl, supra,* 53 *N.J.* at 53–54. Even though the Legislature was aware of *Miehl*, the Act has only one specific reference to immunity for weather conditions which is found in *N.J.S.A.* 59:4–7. Unlike *Miehl*, that provision does not create an absolute immunity for snow removal. It creates a climatological immunity only where effects of the weather conditions are the sole cause of the accident. *See Meta v. Township of Cherry Hill*, 152 *N.J.Super.* 228 (App.Div.1977), cert. den. 75 *N.J.* 587 (1977); *McGowan v. Borough of Eatontown*, 151 *N.J.Super.*

440 (App.Div.1977). In the present case the accident was caused by a combination of the snowfall and the removal operations. We therefore agree with *Paternoster* that to the extent that *Miehl* made no distinction between discretionary high-level decision making and the operational activity associated with implementation of a discretionary decision, *N.J.S.A.* 59:2–3d and *N.J.S.A.* 59:4–7 have modified *Miehl.* Although *Miehl* was not discussed in *Kolitch v. Lindedahl,* 100 *N.J.* 485, 495 (1985) what the court stated there is pertinent here. Under the Act

> there is a distinction to be made between a planning-level or discretionary decision, which is generally entitled to immunity, and an operational or ministerial action, which is not. See *N.J.S.A.* 59:2–3; *Costa v. Josey,* 83 *N.J.* 49, 58–60 (1980). As one court has explained, "[a] discretionary act * * * calls for the exercise of personal deliberations and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and *acting on them* in a way not specifically directed. *Miree v. United States,* 490 *F.Supp.* 768, 774 (N.D.Ga. 1980)."

Consistent with the comment to *N.J.S.A.* 59:2–2a, we believe the Act continued absolute immunity for snow removal only as to the high-level policy decision making and as established in *N.J.S.A.* 59:4–7. Once the public entity decides to exercise that high-level policy decision in favor of snow removal, however, the snow removal undertaking becomes operational or ministerial and does not enjoy absolute immunity associated with a high-level planning decision. Under those circumstances (or at that point) the operational or ministerial activity involved in the snow removal process must be judged by the standard of care set forth in *N.J.S.A.* 59:2–3d and *N.J.S.A.* 59:4–2 in order to determine whether there is any liability. *See also* the Comment to *N.J.S.A.* 59:4–2 which states that this section generally comports with established case law respecting a public entity's liability in its capacity as a landowner and cites *Miehl* as one of the cases to support its thesis.

We hold that the trial judge erred in granting summary judgment because factual questions existed as to whether the Department was liable under *N.J.S.A.* 59:2–3d and *N.J.S.A.*

59:4-2. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 73–75 (1954). The Department did not seek summary judgment in the trial court based upon *N.J.S.A.* 59:4-7. *See also Horan v. State,* 212 *N.J.Super.* 132 (App.Div.1986). Should the Department make such an application on the remand a judge will have to decide whether the injuries were "caused solely by the effect on the use of the streets and highways of weather conditions." *N.J.S.A.* 59:4-7. It seems unlikely, though not impossible, that the Department can establish that the snowbank was caused solely by the natural accumulation of snow rather than by the combination of the snowfall and the snow removal operation.

Summary judgment in favor of the Department is reversed and the matter is remanded to the Law Division for further proceedings. We do not retain jurisdiction.

Reversed.